UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| SONIA KUMAR, KIMBERLY KAREUS, | ) | |
| SHELBY STEMPKOWSKI, and | ) | |
| MARY SCHNURER, | ) | |
| on behalf of themselves and others | ) | |
| similarly situated, | ) | |
| | ) | |
| Plaintiffs, | ) | Case No.  20-cv-5011 |
| vs. | ) | |
| | ) | **CLASS ACTION COMPLAINT** |
| MATHERSON ORGANICS, LLC, d/b/a | ) | |
| Active Wow, | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| Defendant. | ) | |
| | ) | |

Plaintiffs Sonia Kumar, Kimberly Kareus, Shelby Stempkowski, and Mary Schnurer ("Plaintiffs") bring this Class Action against Matherson Organics, LLC, d/b/a Active Wow ("Defendant" or "Active Wow" herein) on behalf of themselves and all others similarly situated, and allege the following based on their personal knowledge and the investigation of their counsel:

## I.    INTRODUCTION

1.      This is a consumer Class Action against Defendant for the false advertising, unfair and deceptive marketing practices, and materially misleading claims and omissions it negligently employed and disseminated in connection with the sale of a line of whitening dental products containing activated charcoal, under the brand name Active Wow. (Defendant is referred to herein by its brand name Active Wow.)

2.      Activated charcoal is highly porous and has adsorptive qualities that can be useful in certain contexts. In recent years, health and beauty products containing activated charcoal have become a consumer sensation. Marketers, celebrities and social media influencers tout a variety of

activated charcoal products for purported detoxifying properties and other enhanced wellbeing and health benefits. Consumers have been willing to pay a premium for these charcoal products.

3.      Active Wow sells numerous oral care products containing activated charcoal, all of which are promoted as whitening, detoxifying, and drawing stains out through charcoal adsorptive properties. Their whitening charcoal products include toothpastes, toothpowders, as well as gels that contain charcoal (sold in whitening 'pens' and whitening 'kits' with teeth trays). At issue in the allegations asserted herein are Active Wow's charcoal toothpowder products and toothpastes These products include the following:

> Active Wow '24K White' Activated Coconut Teeth Whitening Charcoal Powder – All Natural
>
> Active Wow Charcoal Teeth Whitening Powder – Peppermint
>
> Active Wow Charcoal Teeth Whitening Powder – Spearmint
>
> Active Wow Charcoal Teeth Whitening Powder – Vanilla
>
> Active Wow Activated Coconut Charcoal Powder – Natural Teeth Whitening
>
> Active Wow Activated Charcoal Toothpaste – Teeth Whitening Formula with Organic Coconut Oil & Xylitol

These products as well as any other Active Wow toothpowders and toothpastes containing activated charcoal that have been marketed and made available for purchase by Defendant within the relevant statute(s) of limitations, are collectively referred to herein as "**Charcoal Tooth Products**" or any of such products generically referred to as "**Charcoal Tooth Product**."

4.      As detailed later herein, Plaintiff Kumar purchased both the Active Wow Activated Coconut Charcoal Powder – Natural Teeth Whitening (specifically referred to herein as "**Activated Coconut Charcoal Powder**" but otherwise referred to herein generally as one of the Charcoal Tooth Products (as defined above in Paragraph 3) and the Active Wow Activated

2

Charcoal Toothpaste – Teeth Whitening Formula with Organic Coconut Oil & Xylitol (specifically referred to herein as "**Activated Coconut Charcoal Toothpaste**" but otherwise referred to herein generally as one of the Charcoal Tooth Products (as defined above in Paragraph 3)), Plaintiff Kareus and Plaintiff Stempkowski both purchased the Active Wow Activated Coconut Charcoal Powder – Natural Teeth Whitening (specifically referred to herein as "**Activated Coconut Charcoal Powder**" but otherwise referred to herein generally as one of the Charcoal Tooth Products (as defined above in Paragraph 3)), and Plaintiff Schnurer purchased the Active Wow '24K White' Activated Coconut Teeth Whitening Charcoal Powder – All Natural (specifically referred to as "**24K White Charcoal Toothpowder**" but otherwise also referred to herein generally as one of the Charcoal Tooth Products (as defined above in Paragraph 3)). The Activated Coconut Charcoal Powder, Activated Coconut Charcoal Toothpaste, 24K White Charcoal Toothpowder, and other Charcoal Tooth Products at issue herein are substantially similar in that they are products of the similar type and have largely the same ingredients, and were marketed with the same or essentially similar misrepresentations and omissions.

5.      Active Wow promotes its Charcoal Tooth Products as whitening, detoxifying and adsorptive, safe, and generally beneficial to oral health. The Defendant makes claims on the jar labels and packaging of the Charcoal Tooth Products as well as on the Active Wow website, on Amazon.com and other online retailers, and elsewhere in extensive online marketing and print advertising.

6.      These claims include but are not limited Active Wow's promises that its charcoal formula (contained in each of the Charcoal Tooth Products): "naturally whitens your teeth"; "is safe to use for whitening your teeth, while being easy on your gums"; "purifies and detoxifies"; "easy on gums, and gentle on enamel"; is "enamel safe"; and "is your new best friend for

detoxifying the mouth, removing bad breath, and gently polishing away stains quickly and easily." Active Wow claims the activated charcoal "works by pulling stains off your teeth through a process called 'adsorption'." Printed on each jar of Charcoal Toothpowder is the statement: "Enjoy a whiter, healthier smile, the natural way!"

7.    Active Wow promotes its products as "safe to use", and promotes itself as a brand to be trusted and relied upon by consumers in connection with their decision-making as to oral health and dental hygiene. Through its marketing campaign, which is ubiquitous and high in volume and content, Active Wow conveys a clear message that the brand is extremely conscientious and focused on health and safety. Active Wow specifically holds itself out as possessive of expertise and specialized knowledge on oral healthcare, and qualified to promote its "thoughtfully formulated" Charcoal Toothpastes. Hello has consistently employed this messaging for several years, and through it has sought to instill consumer confidence. It has done so knowing consumers' belief in its purported specialized knowledge and trustworthiness would induce consumers to rely on its specific claims concerning its products. Hello was and remains uniquely situated to evaluate the veracity of its claims on its own products, and consumers were justified to rely on the brand and the ubiquitous claims of safety, gentleness, 'natural' whitening, detoxifying and other properties of the Charcoal Toothpastes. And consumers (including the named Plaintiffs) did in fact so rely, when they made their decision to purchase the products and use them for dental hygiene and oral health maintenance. As such, a "special relationship" that imposes a duty on Hello to impart correct information to Plaintiffs and other consumers was in existence at all relevant times.[1]

---

[1]    "In the commercial context, a duty to speak with care exists when "the relationship of the parties, arising out of contract or otherwise, [is] such that in morals and good conscience the one has the right to rely upon the other for information."" *Kimmell v. Schaefer*, 89 N.Y.2d 257, 263–64, 675 N.E.2d 450, 454 (1996), citing *International Prods. Co. v. Erie R.R. Co.,* 244 N.Y. 331, 338, 155 N.E. 662. Liability for negligent misrepresentation has been imposed on

8.      Active Wow's marketing strategy has been very successful, and the Charcoal Tooth Products have become top sellers in their product category. However, that success is built on messaging that is misleading and deceptive to consumers, and that negligently and misleadingly omits material information concerning the safety and efficacy of use of charcoal in oral care.

9.      Indeed, Active Wow was well aware that it had duties to uphold as to its marketing, advertising and labeling of the Charcoal Toothpastes. This is in part evidenced by the fact that the oral care products it develops, markets, and sells are all subject to a legal and regulatory framework over cosmetics and over-the-counter drugs.[2] For example, the Federal Trade Commission ("FTC") requires that marketers such as Active Wow ensure that advertising claims are truthful, not misleading, and supported by a reasonable basis and to do so before disseminating such claims. The Federal Drug Administration ("FDA") prohibits the misbranding of products such as the Charcoal Toothpastes, and are deemed misbranded if false or misleading in any particular. They can also be deemed misbranded if certain claims conveyed lack the requisite competent and reliable scientific evidence to substantiate them. Federal law and agency regulations, as well as certain state consumer protection laws that mirror the same, clearly provide for a standard of care and various obligations as to transparency, truthfulness, disclosures and substantiation of the health, safety and efficacy claims for products that qualify as cosmetics, over-the-counter drugs, or a combination of the two.

---

those "who possess unique or specialized expertise, or who are in a special position of confidence and trust with the injured party such that reliance on the negligent misrepresentation is justified." *Id.* "The existence of such a special relationship may give rise to an exceptional duty regarding commercial speech and justifiable reliance on such speech." *Id.*

There are three factors relevant to whether a special relationship exists: whether the defendants "held or appeared to hold unique or special expertise," whether there is a special relationship of "trust or confidence," and whether there are allegations that the "speaker was aware of the use to which the information would be put and supplied it for that purpose." *Izquierdo v. Mondelez Int'l, Inc.*, No. 16-CV-4697 (CM), 2016 WL 6459832, at *8 (S.D.N.Y. Oct. 26, 2016).

[2]      Each of the Charcoal Toothpastes qualify as a cosmetic or a combination of cosmetic and over-the-counter drug, under the pertinent legal framework, as explained *infra*.

10.     Multiple state laws have statutorily incorporated and mirror portions of the relevant federal regulatory framework. For example, California's Sherman Food, Drug & Cosmetic Law (California Health & Safety Code §§ 109875 *et seq*.) (the "Sherman Law") adopts pertinent FDA regulations.[3] The Sherman Law makes it unlawful to falsely advertise or misbrand products such as the Charcoal Tooth Products, as well as to sell them.

11.     Despite its legal obligations to do so, Active Wow did not (and does not) possess the requisite evidence to substantiate its claims concerning the benefits and safety of its Charcoal Tooth Products; such evidence did not exist when it made its claims, nor does it currently exist.

12.     The consensus of respected dentists, researchers and industry experts weighs *against* the use of charcoal dentifrices,[4] due to the lack of scientific substantiation on safety and efficacy, as well as risks of harm. For example, in 2017, findings published in the Journal of the American Dental Association (JADA) concluded that there is insufficient laboratory or clinical data to substantiate the safety and efficacy of dentifrice containing activated charcoal, and cautioned against its use. In 2019 the British Dental Journal (BDJ) again confirmed a lack of substantiation in the form of scientific, sound and reliable studies. The 2019 BDJ article expressed concern that charcoal toothpastes are a "marketing gimmick" that could, in fact, cause harm to oral health, structures, and aesthetics. Many qualified dental professionals have also spoken out on these findings and other safety, therapeutic and cosmetic concerns, and have cautioned against the use of charcoal dentifrices. Dr. Ada Cooper, a spokesperson for the American Dental Association,

---

[3] The federal and parallel state requirements imposed on Active Wow are not raised herein in order to seek to enforce any standard of conduct that would exceed that which is required under the federal framework.
[4] "Dentifrice" is a term for tooth-cleansing pastes and powders.

recently commented on the lack of safety substantiation (and reported hazards) for charcoal dentifrice and stated: "Just because something is popular doesn't mean it's safe."[5]

13.      Notably, the American Dental Association ("ADA") has not approved *any* charcoal dentifrices for its ADA Seal of Acceptance (the "ADA Seal"). The ADA Seal certifies the safety and efficacy of a dentifrice, based on clinical data and research.

14.      Active Wow knew or should have known that many of its claims regarding the Charcoal Tooth Products lacked a credible basis or substantiation, and that they were misleading, deceptive, and/or false. Active Wow also omitted material facts, including that scientific literature counter-indicates the safety and efficacy of charcoal in oral care use. Such representations and omissions were material and likely to deceive a reasonable consumer, yet Active Wow nonetheless negligently and recklessly proceeded with its opportunistic marketing campaign, and continues to do so, without regard to the consequences to the deceived consumer.

15.      To bolster its inaccurate, misleading claims and omissions on the benefits and safety of the Charcoal Tooth Products, Active Wow extols itself as exceptionally conscientious of health and safety. It negligently and falsely advertises itself as such in order to secure consumer confidence in the brand and its Charcoal Tooth Products and to induce consumer purchases.

16.      Active Wow intended for consumers to rely on its claims, which are ubiquitously made in advertising and marketing materials, and printed on the products' packaging and labeling. Active Wow knowingly presented its inaccurate claims and engaged in deceptive practices, precisely due to Active Wow's belief that such conduct was likely to deceive the consumer and induce a purchase in reliance thereon.

---

[5]  "Beware Whitening Promise of Charcoal Toothpastes," The Family Dental Center, Mar. 2019, [https://thefamilydentalcenter.com/blog/beware-whitening-promise-of-charcoal-toothpastes/]. (emphasis added).

17.     Active Wow also omitted material facts, including that charcoal, when used in dentifrice is known to be abrasive to enamel and the gums, and to pose risky safety hazards with use. And, it may in fact be detrimental and harmful to oral health and aesthetics. It failed to disclose that scientific literature counter-indicates the safety and efficacy of charcoal in oral care use. It failed to disclose its lack of safety substantiation, despite a duty to do so.

18.     Such representations and omissions were and are materially misleading, in that they are likely to deceive a reasonable consumer and also directly concern unique and intrinsic qualities of the products, and caused an increase in consumers' perception of their value. Consumers (including the named Plaintiffs) would not have paid premium prices or even purchased them at all, but-for the representations on the attributes of activated charcoal and the benefits of its products could naturally and safely deliver. Moreover, had Active Wow revealed that charcoal in dentifrice is highly abrasive, carries significant risks, and/or even that Active Wow lacked the substantiation it was legally required to possess for its claims, then reasonable consumers, who had been drawn in by Active Wow's friendly marketing tactics, would have had cause to refrain from purchasing, as well as using the Charcoal Tooth Products.

19.     Active Wow nonetheless aggressively proceeded with its opportunistic marketing campaign, purporting to be trustworthy in order to secure consumer confidence, while negligently and recklessly making false, misleading, unsubstantiated, or impossible claims on its benefits and properties. To the current day, Active Wow continues its negligent and false advertisement campaign to induce consumer reliance and purchase, without regard to the consequences to the deceived consumer.

20.     Active Wow's messaging and marketing claims are substantial in volume and content and are ubiquitously made both online and are printed on the product packaging and

labeling of the Charcoal Tooth Products, such that the Plaintiffs and other consumers are exposed to a coherent advertising scheme and claims that are uniformly the same and/or substantially similar.

21.     As a result of Active Wow's marketing claims and messaging Plaintiffs and other consumers reasonably and justifiably relied upon and attributed credence and value to the asserted benefits, efficacy, and safety of the Charcoal Tooth Products. They did not know, nor could have known, of Active Wow's omissions of material information and misrepresentations, deceptive and false marketing practices, or of the lack of required substantiation on safety and efficacy.

22.     As a direct and proximate result of Active Wow's misrepresentations, material omissions and deceptive practices in its advertising and labeling, Plaintiffs and others similarly situated have suffered actual injuries from their purchase of one or more of the Charcoal Tooth Products, and did not receive the full value of their purchase.[6] Active Wow successfully induced Plaintiffs and the putative Class Members to pay for oral care products that (i) do not perform by 'naturally' whitening; (ii) do not purify and detoxify, nor provide other promised benefits through the adsorptive properties of charcoal; (iii) are not "easy on gums, and gentle on enamel" or clinically proven to be enamel-safe, or otherwise safe and gentle as was represented; (iii) are not of the value and quality for the price premium paid; (iv) do not meet basic oral hygiene needs that

---

[6]     All that Plaintiffs must allege that "on account of a materially misleading practice, [they] purchased a product and did not receive the full value of [their] purchase." *See Izquierdo v. Mondelez Int'l, Inc.*, No. 16-cv-04697 2016 WL 6459832, at *7 (S.D.N.Y. Oct. 26, 2016) (*quoting Orlander v. Staples, Inc*., 802 F.3d 289, 302 (2d Cir. 2015)). "Defendant argues that New York courts have recognized the payment of a plaintiff's purchase price as a Section 349 injury only when the plaintiff paid a "price premium." But there is no such rigid "price premium" doctrine under New York law." *Orlander v. Staples, Inc*., 802 F.3d 289, 302 (2d Cir. 2015).

In some consumable products cases, the issue of a specific "price premium" will be relevant because it shows that plaintiffs paid more than they would have for the good but for the deceptive practices of the defendant-sellers. *See Koenig v. Boulder Brands, Inc.*, 995 F.Supp.2d 274, 288–89 (S.D.N.Y.2014) (finding a sufficiently-pled § 349 injury where plaintiff alleged that he would not have paid the price charged for "fat-free" milk had he known it contained fat); *Lazaroff v. Paraco Gas Corp.*, 967 N.Y.S.2d 867, 2011 WL 9962089 (N.Y.Sup.Ct. Kings Cty., Feb. 25, 2011) (finding a sufficiently-pled § 349 injury where plaintiff alleged that he would not have paid the price charged for a "20 pound" propane cylinder had he known it contained only 15 pounds of propane).

other, less expensive dentifrices would; and (v) may in fact be detrimental and harmful to oral health and aesthetics. Furthermore, some consumers have experienced the negative effects that activated charcoal can cause, including discoloration of the gumline, gum irritation, excessive abrasion of tooth enamel and dentin, yellowing of the teeth, and damage to dental implants.[7]

23.     By falsely advertising and misbranding its Charcoal Tooth Products, Active Wow prioritizes its own profits and jeopardizes consumers' dental hygiene, oral health and safety. Active Wow's conduct in its advertising, labeling, and sale of the Charcoal Tooth Products was, and continues to, be substantially injurious to consumers, as well as unconscionable and in contravention of public policy.

24.     Active Wow's false and misleading claims and omissions enabled it to sell the Charcoal Tooth Products in great quantity.

25.     Active Wow capitalizes on foreseeable consumer misconceptions, and prioritizes its own profits and jeopardizes consumers' oral health, safety, and wellbeing when it makes misleading and unsubstantiated claims on the safety, health and efficacy of the Charcoal Tooth Products and omits contradictory and material information, including on safety and risk. It fails to make disclosures it had a duty to make, and negligently makes its unsubstantiated health, efficacy and safety claims despite its legal duties to substantiate the same, and to ensure the safety and efficacy of its products. Material omissions include the potential hazards of using charcoal in dentifrice, and that scientific literature counter-indicates the safety and efficacy of charcoal in oral care use.

---

[7]     And, for the rest, on top of their out-of-pocket economic injury many are left other murkier consequences such as depleted oral health or a continued inability to know for sure if the use of the Charcoal Tooth Products damaged their enamel or gums or was otherwise detrimental to their oral health.

26.     Active Wow's conduct in its advertising, marketing, labeling, and sale of the Charcoal Tooth Products was, and continues to be, in violation of common law, federal and statutory law, and public policy; it is also immoral, unethical, unscrupulous, and substantially injurious to consumers. Defendant was unjustly enriched as a result its wrongful conduct.

27.     Defendant's conduct is in violation of New York's Uniform Commercial Code §§2-313 *et seq.*, New York General Business Laws §§349 *et seq*., the Michigan Consumer Protection Act §§ 445.901, *et seq.* (the "MCPA"), the Uniform Commercial Code (the "UCC"), the California Consumer Legal Remedies Act, California Civil Code §§ 1750, *et seq.* (the "CLRA"), California's Unfair Competition Law, Bus. & Prof. Code §§ 17200, *et seq.* (the "UCL"), and California's False Advertising Law, Bus. & Prof. Code §§ 17500, *et seq.* (the "FAL"). Defendant's conduct also constitutes a breach of express and implied warranties, as well as violations of common law including negligent misrepresentation.

28.     Plaintiffs bring this proposed Class Action on behalf of themselves and other similarly situated consumers in the United States who purchased Active Wow Charcoal Tooth Products within the relevant statute of limitations period (the "Nationwide Class"), as well as a proposed subclass of members who purchased the Charcoal Tooth Products in the state of New York (the "NY Subclass"), Michigan (the "MI Subclass"), and California (the "CA Subclass") (all potential Class Members are collectively referred to herein the "Classes" or "Class Members"). For the alleged violations of state statutory law and common law, Plaintiffs seek, on behalf of themselves and the putative Class Members, to recover compensatory and statutory damages, treble or punitive damages as available, attorneys' fees and costs, as well as declaratory and injunctive relief. Plaintiffs further seek disgorgement and restitution as statutorily provided for, as well as on the basis of quasi-contract.

## II.   PARTIES

29.   Plaintiff Sonia Kumar ("Plaintiff Kumar" or "Ms. Kumar") is a natural person who lives within the Eastern District of New York and is a citizen of the state of New York. On March 8, 2018, Ms. Kumar purchased the Active Wow Activated Coconut Charcoal Powder – Natural Teeth Whitening on Amazon.com. Prior to her decision to enter into a transaction and purchase the toothpowder, Ms. Kumar saw and reviewed Active Wow's advertising claims online on Amazon.com and the claims on the toothpowder packaging and labeling itself, and she made her purchase in reliance thereon. Subsequently, because the Activated Coconut Charcoal Powder caused quite a mess when she used it, Ms. Kumar then purchased the Active Wow Activated Charcoal Toothpaste – Teeth Whitening Formula with Organic Coconut Oil & Xylitol (both the Active Wow Activated Coconut Charcoal Powder – Natural Teeth Whitening and Active Wow Activated Charcoal Toothpaste – Teeth Whitening Formula with Organic Coconut Oil & Xylitol are referred to as the "products" for purposes of this paragraph) from a Rite Aid also within the Eastern District of New York. She expected that the products would meet the representations made, including but not limited to that they would whiten teeth, that they would remove toxins, that they would be safe for daily use, and that they would be effective to adequately meet dental hygiene and oral health care needs. She relied on the marketing and packaging that represented activated charcoal as having unique properties that added a special value, and she would not have purchased the product but-for the fact that it contained activated charcoal, the inclusion and purported benefits for which she paid a price premium. However, Ms. Kumar's expectations, which were based on Active Wow's own representations (made on the products themselves and online), were not met. For example, rather than 'naturally whitening' her teeth, the products were actually abrading her enamel, and had not been proven safe for use. Further, as a direct and

proximate result of using the products Ms. Kumar has experienced teeth sensitivity, gum recession, and an overall weakening of her teeth that has caused a filling on one of her teeth to break repeatedly.

30.     Plaintiff Kimberly Kareus ("Plaintiff Kareus" or "Ms. Kareus") is a natural person and a citizen of the state of Michigan. In or around March 2019, Ms. Kareus purchased the Active Wow Activated Coconut Charcoal Powder – Natural Teeth Whitening (specifically referred to herein as Activated Coconut Charcoal Powder) from a Walmart store in Midland, Michigan. Prior to her decision to enter into a transaction and purchase the toothpowder, Ms. Kareus was exposed to and saw the package labeling and the online marketing claims. She made her purchase in reliance on She would not have purchased the product but-for the fact that it contained activated charcoal, the inclusion and purported benefits for which she paid a price premium. She expected that the product would meet the representations made, including but not limited to that it would whiten teeth, that it would remove toxins, that it would be safe for daily use, and that – as a natural alternative to toothpaste – it would be effective to adequately meet dental hygiene and oral health care needs. However, Ms. Kareus' expectations, which were based on Active Wow's own representations, were not met. For example, rather than 'naturally whitening' her teeth, the product was actually abrading her enamel, and had not been proven safe for use.

31.     Plaintiff Shelby Stempkowski ("Plaintiff Stempkowski" or "Ms. Stempkowski") is a natural person and a citizen of the state of Michigan. In or around November 2017, Ms. Stempkowski purchased the Active Wow Activated Coconut Charcoal Powder – Natural Teeth Whitening (specifically referred to herein as Activated Coconut Charcoal Powder) from a Walmart store in Warren, Michigan. Prior to her decision to enter into a transaction and purchase the toothpowder, Ms. Stempkowski was exposed to and saw the package labeling and the online

marketing claims. She made her purchase in reliance on Active Wow's marketing and advertisements, and the representations it made on its packaging. She relied on the marketing and packaging that represented activated charcoal as having unique properties that added a special value, and she would not have purchased the product but-for the fact that it contained activated charcoal, the inclusion and purported benefits for which she paid a price premium. She expected that the product would meet the representations made, including but not limited to that it would whiten teeth, that it would remove toxins, that it would be safe for daily use, and that – as a natural alternative to toothpaste – it would be effective to adequately meet dental hygiene and oral health care needs. However, Ms. Stempkowski's expectations, which were based on Active Wow's own representations, were not met. For example, rather than 'naturally whitening' her teeth, the product was actually abrading her enamel, and had not been proven safe for use. Further, usage of the product exacerbated Ms. Stempkowski's fluorosis, making it much more noticeable.

32.     Plaintiff Mary Schnurer ("Plaintiff Schnurer" or "Ms. Schnurer") is a natural person and a citizen of the state of California. On June 22, 2017, Ms. Schnurer purchased the Active Wow '24K White' Activated Coconut Teeth Whitening Charcoal Powder – All Natural (specifically referred to herein as 24K White Charcoal Toothpowder) on Amazon.com. Prior to her decision to enter into a transaction and purchase the toothpowder, Ms. Schnurer was exposed to and saw the package labeling and the online marketing claims. She made her purchase in reliance on Active Wow's marketing and advertisements, and the representations it made on its packaging and online (including in its Amazon listing for the product she purchased). She relied on the marketing and packaging that represented activated charcoal as having unique properties that added a special value, and she would not have purchased the product but-for the fact that it contained activated charcoal, the inclusion and purported benefits for which she paid a price premium. She expected

that the product would meet the representations made, including but not limited to that it would whiten teeth, that it would remove toxins, that it would be safe for daily use, and that – as a natural alternative to toothpaste – it would be effective to adequately meet dental hygiene and oral health care needs. However, Ms. Schnurer's expectations, which were based on Active Wow's own representations, were not met. For example, rather than 'naturally whitening' her teeth, the product was actually abrading her enamel, and had not been proven safe for use.

33.    All of the named Plaintiffs incurred the out-of-pocket purchase price for a falsely advertised and misbranded dentifrice(s) and they each paid a price premium over other similar products. Each of the Charcoal Tooth Products purchased by the respective Plaintiffs did not and could not deliver the promised health and cosmetic benefits and did not possess the detoxifying, 'naturally whitening', and other properties Active Wow claimed. The products also lack the represented level of safety and safety substantiation. Moreover, the products' use poses a health risk and is potentially detrimental to oral health and aesthetics. As a result of their respective purchases, all Plaintiffs have suffered actual damages and economic injuries.

34.    Plaintiffs all have standing to assert claims on all Charcoal Tooth Products sold by Active Wow (of varying flavors and/or types sold at different times), because the products are substantially similar. Defendant's negligent and unlawful conduct as to all of the Charcoal Tooth Products is, and continues to be, substantially similar as to the particular Charcoal Tooth Products it sold to all Plaintiffs. Defendant conveys the same or very similar marketing messages, including misrepresentations and omissions of material fact. The packaging, labeling and marketing claims and omissions by Active Wow induced numerous consumer purchases, and resulted in the same types of injuries to others as was suffered by all Plaintiffs.

35.     All Plaintiffs continue to suffer ongoing concrete harms and imminent injuries because they are unable to rely on the veracity of Active Wow's product labeling and advertising. Additionally, they will be unable to rely on the veracity of Active Wow's product labeling and advertising in the future when they want to make a purchase of another Active Wow dentifrice but as previously misled consumers, they lack confidence in the representations made. Alternatively, when considering a purchase decision in the future, they will be injured if they believe the claims have been substantiated or corrected, and, as any reasonable consumers would, think they can rely on the labeling and marketing to be truthful and non-misleading and be confident in the representations concerning the products.

36.     None of the named Plaintiffs received the promised benefits, efficacy or safety, or received the full value of their purchases. Plaintiffs' expectations were not met after use of the Charcoal Tooth Products. Each of the Plaintiffs subsequently learned more about the extent of the Charcoal Tooth Products' failure to comport with Active Wow's representations, including that the detoxifier claims were implausible and pseudo-scientific; that the charcoal ingredient was an unnecessarily abrasive agent on teeth and enamel; that the activated charcoal had no 'detoxification' or 'naturally whitening' or stain-lifting functions in the mouth, or other promised oral health benefits; that safety and efficacy had unsubstantiated; and that the products were potentially unsafe. They discovered that it was effectively worthless, and certainly not worthy of the price premium paid.

37.     Defendant Matherson d/b/a Active Wow is a citizen of the state of Florida. It is registered in the state of Florida and has its principal place of business at 75 North Woodward Avenue, #85899, Tallahassee, Florida 32313. Defendant is a health and beauty company engaged in the business of selling the Active Wow Charcoal Tooth Products among other health and beauty

products to consumers from its website, www.activewow.com, through online stores of third-party retailers including Amazon, and through the brick-and-mortar stores owned by third parties and other third-party distributors. It conducts mass marketing campaigns and distributes its Active Wow Charcoal Tooth Products throughout the United States and specifically in the states where each of the Plaintiffs lives and is a citizen.

38.   Plaintiffs have standing to pursue injunctive relief. They continue to suffer ongoing harm because of their inability to be sure that the products they purchased were safe and did not cause damage or detriment or negative consequences of which they are not yet aware. They also have an imminent threat of future harm due to the inability to rely on the veracity of the labels and advertising of Charcoal Tooth Products in the future, when deciding whether to make a purchase of another Active Wow dentifrice. Each of the named Plaintiffs want to purchase charcoal tooth products that naturally and safely whiten teeth and bear other benefits, and would consider purchasing one or more of the Charcoal Tooth Products again if they could be sure that the representations and claims were truthful and accurate, and that the products are not mislabeled or falsely advertised. As a previously misled consumer, they will lack confidence in the representations made by Active Wow.[8]

39.   Moreover, the dentifrices that Plaintiffs intend to buy in the future, including those that are effective for safely and gently whitening teeth and provide other cosmetic and oral health benefits, even if not branded as "Active Wow" or in the same product in the line of Charcoal Tooth Products at issue here, may be under brands that are owned or acquired by Active Wow itself.[9] As

---

[8]      Alternatively, when considering a purchase decision in the future, each will be injured if they believe that Active Wow's claims have in fact been substantiated or corrected, and, as any reasonable consumer would, think it is appropriate to rely on the labeling and marketing to be truthful and non-misleading and be confident in the representations concerning the products.

[9]      *See, e.g., In re Alma Litigation*, 282 F.Supp.3d 751, 770 (S.D.N.Y. 2017) (finding standing where "Plaintiffs allege, moreover, that they "intend to buy hair products in the future, including relaxers, under brands that may be owned or acquired by L'Oreal.")

such, on a broad level Plaintiffs' ability to trust in the accuracy of advertising and product labeling is, and will be compromised, absent specific injunctions ordering Defendant and its affiliates not to engage in false or misleading advertising and not to place products on the market without claim substantiation, or indeed, as long as unsafe and unsubstantiated products remain on the shelves.[10]

40.     The inability to rely on labels and advertising claims in the future is a harm to the Plaintiffs, and, because Active Wow continues to sell its Charcoal Tooth Products with the same advertising scheme and labeling, and its misconduct is ongoing, other consumers are currently being deceived and will continue to be deceived, just as the Plaintiffs and other consumers were previously deceived. The failure to correct these practices and provide injunctive relief goes against public policy, and the New York consumer protection laws, which broadly permit "any person who has been injured by reason of any violation of this section may bring an action in his own name to enjoin such unlawful act or practice." N.Y. GBL § 349(h).[11]

### III.     JURISDICTION AND VENUE

41.     This Court has jurisdiction over this matter under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d)(2), as the amount in controversy exceeds $5 million, exclusive of interest and costs; it is a Class Action of over 100 members; and all named Plaintiffs are citizens of a state different from Defendant.

42.     This Court has personal jurisdiction over Defendant,[12] because Defendant has sufficient minimum contacts with the state of New York and purposefully availed itself, and

---

[10]     *Id*.

[11]     *See, e.g., In re Alma Litigation*, 282 F.Supp.3d 751, 770 (S.D.N.Y. 2017)(in Article III analysis for injunctive relief standing, also taking into account the broad injunctive relief remedy under NY consumer protection statute); *see also Belfiore v. Procter & Gamble Co.*, 94 F.Supp.3d 440, 445 (E.D.N.Y 2015).

[12]     At all relevant times hereto, Defendant was a non-domiciliary entity that was duly authorized to conduct business in the state of New York. Defendant has committed tortious acts causing injury to consumers within the state of New York, which Defendant should reasonably have foreseen.

continues to avail itself of the jurisdiction of this Court through the privilege of conducting its business ventures in the state of New York, thus rendering the exercise of jurisdiction by the Court permissible under traditional notions of fair play and substantial justice. Specifically, it promotes its products (including the Charcoal Tooth Products) in this state through print and online advertising and marketing (disseminated and targeted to New York residents), and also distributes and sells its products (including the Charcoal Tooth Products) in the state of New York. Much of the conduct giving rise to this action occurred in the state of New York because many of the acts, claims and omissions giving rise to this action occurred in and were disseminated in the state of New York; because Plaintiff Kumar purchased the Activated Coconut Charcoal Powder in the state of New York and the product was delivered to and/or used in New York; because Plaintiff Kumar purchased the Activated Coconut Charcoal Toothpaste in New York and the product was used in New York; because Active Wow entered into and serviced numerous sales transactions for the Charcoal Tooth Products in the state; and numerous putative Class Members purchased the Charcoal Tooth Products in New York, and did so in reliance on and as an immediate result of, the claims and omissions by Active Wow in its labeling, marketing, advertising scheme. Active Wow's activity within the state is substantial and is not isolated.

43.    Venue is proper in this district under 28 U.S.C. § 1391(a) because a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this district, as Defendant does business throughout this district (including promoting, selling, marketing, and distributing the Active Wow Charcoal Tooth Products at issue), Plaintiff Kumar made her purchase of the Activated Coconut Charcoal Toothpaste in this district and was used in this district, and Plaintiff Kumar made her purchase of the Activated Coconut Charcoal Toothpowder in this district and her purchased product was delivered to, and used, in this district.

19

## IV.    FACTUAL ALLEGATIONS

### A.    Background on Activated Charcoal

44.    Activated charcoal is made from coal, wood, coconut shells, sawdust, bamboo, or similar ingredients.[13] The raw material is superheated, treated with different chemicals, and then superheated a second time with steam.[14]

45.    Activated charcoal has adsorptive qualities that have proven to be quite useful in certain limited contexts. For decades, it has been used in the emergency medical treatment of certain types of poisonings and drug overdoses, because, when administered correctly, it can adsorb certain heavy metals, drugs and other toxins.[15] The effectiveness of medicinal activated charcoal in the emergency room setting is limited and dependent on specific factors, such as the type of drug, poison, toxin, timing between ingestion of the toxin and ingestion of the medicinal charcoal, and dosage of each.[16]

46.    Activated charcoal has also been used in industrial and environmental settings to extract certain organic and inorganic substances from water.[17] For example, it is sometimes used to remove excess amounts of fluoride from drinking water.[18] It is used in juice manufacturing to

---

[13] Active Wow claims its activated charcoal is made from coconut shells.

[14]"Activated Charcoal FAQ," General Carbon Corp. [http://generalcarbon.com/facts-about-activated-carbon/activated-carbon-faq/] (last accessed June 26, 2019) (General Carbon Corp. is an activated charcoal manufacturer).

[15]*See generally*, Robert W. Derlet & Timothy E. Albertson, "Activated Charcoal—Past, Present and Future," 145 *West J. Med.* 493 (Oct. 1986)
[https://www.ncbi.nlm.nih.gov/pmc/articles/PMC1306980/pdf/westjmed00158-0063.pdf].

[16]*Id.*; *see also* Derlet & Alberston, *supra* note 3, at 493–92 & Table 1; Jennifer A. Lowry, "Use of Activated Charcoal in Pediatric Populations," World Health Organization: Subcommittee of Expert Committee on the Selection and Use of Essential Medicines, Jan. 2008, at 2, [https://www.who.int/selection_medicines/committees/subcommittee/2/charcoal_rev.pdf ] (reviewing literature on medical use of activated charcoal).

[17]*See generally* "The History of Activated Carbon," Jurassic Activated Carbon, Feb. 9, 2014 [https://www.jurassiccarbon.com/blogs/news/12186281-the-history-of-activated-carbon].

[18]Manisha Poudyal & Sandhya Babel, "Removal of Fluoride using Granular Activated Carbon and Domestic Sewage Sludge," 82 *Int'l Proceedings of Chem., Biological, and Envtl. Eng'g* 139 (2015) [http://www.ipcbee.com/vol82/027-IEEA2015-C3024.pdf]; *see also* Behrooz Eftekhar et al., "The Effectiveness of Home Water Purification Systems on the Amount of Fluoride in Drinking Water," *J. of Dentistry, Shiraz U. of Med. Sci.*, Sept. 2015, at 278, (noting that

control color and remove organic compounds.[19] Activated charcoal can also adsorb water-soluble vitamins, including forms of Vitamins C and B.[20]

47.     Inspired by the use of activated charcoal in these limited and particular contexts, enterprising companies like Defendant have been eager to extrapolate charcoal's adsorptive properties for use in a much broader context, often with little to no substantiation. Products containing activated charcoal are increasingly prevalent, and are promoted with vague claims of 'detoxifying' properties as well false or overstated health and beauty benefits. Activated charcoal has been marketed to the public as capable of extracting nearly any undesirable element or substance, and in nearly any context.

48.     Yet, writes Scott Gavura in *Activated Charcoal, The Wellness Scam* (Science Based Medicine, Aug. 8, 2019): "what's popularly called a 'detox' today has nothing to do with actual medical detoxification," and "[f]ake detox, the kind you find in magazines, and sold in pharmacies, juice bars, and health food stores, is **make-believe medicine. The use of the term 'toxin' in this context is meaningless…. but it sounds just scientific enough to be plausible**."[21] Mr. Gavura goes on, "if you hear the words 'detox' uttered anywhere but an emergency room, keep in mind that you're hearing a **marketing pitch, not credible health evidence**."[22] "Despite the marketing hype, activated charcoal has no ability to suck out the toxic chemicals from the rest of your body."[23]

---

use of home water purification systems, including several using carbon-based filtration methods, reduced the amount of fluoride in water).

[19] Cetin Kadakal et al., "Research Note: Effect of Activated Charcoal on Water-Soluble Vitamin Content of Apple Juice," 27 *J. of Food Quality* 171 (Apr. 2004) [https://doi.org/10.1111/j.1745-4557.2004.tb00647.x].

[20] *Id*.

[21] Scott Gavura, "Activated Charcoal, The Wellness Scam," *Science Based Medicine*, Aug. 8, 2019 [https://sciencebasedmedicine.org/activated-charcoal-the-wellness-scam/ ].

[22] *Id*. (emphasis added).

[23] *Id*. (emphasis added).

49.     Multiple scientific and consumer publications have made note of this logical fallacy and have debunked the broadly asserted 'detoxifying' properties of activated charcoal (particularly in its most commonly available form as an ingestible supplement). In April 2017, Consumer Reports published *Activated Charcoal Isn't a Magic Health Bullet,* wherein Julia Calderone writes: "In recent years, people have tried to translate the very limited success of activated charcoal in the ER to their everyday lives, assuming that if it can adhere to and remove certain drugs in an emergency room, it can stop all kinds of toxins, making an already healthy person even healthier."[24] Lisa Sasson, M.S., R.D., clinical associate professor of nutrition at New York University is quoted as saying "**this logical leap is not based in science**."[25]

50.      In another example from 2017, the Superfoodly.com website published *Activated Charcoal Uses May Be Harmful, Possibly Cancerous?* stating: "The problem is that none of these cleansing/detox benefits are backed by science…. **using [charcoal] to remove toxins from your body is nonsensical**, unless you literally just ingested poison (and even then, only certain types will it absorb). There are no clinical trials or peer reviewed research which suggests activated charcoal removes toxins daily when used as a supplement."[26]

51.     Simultaneous with the charcoal trend, consumer demand for teeth-whitening products has risen. The global market for teeth-whitening products is expected to reach $7.4 billion by 2024.[27] Dentists, dental scientists and researchers have raised concerns about the rapid growth of dental health 'fads,' including the use of charcoal dentifrice, which, even when "there is a lack of . . . scientifically supported information around such items, [] this does not stop them from being

---

[24] Julia Calderone, "Activated Charcoal Isn't a Magic Health Bullet," Consumer Reports (April 13, 2017) [https://consumerreports.org/dietary-supplements/activated-charcoal-fad-not-a-magic-health-bullet/].
[25] *Id.*
[26] "Activated Charcoal Uses May Be Harmful, Possibly Cancerous?," Superfoodly (July 28, 2017) [https://www.superfoodly.com/activated-charcoal-uses-side-effects/].
[27] https://www.hexaresearch.com/research-report/teeth-whitening-products-market.

used."[28] As Dr. Ada Cooper, a spokesperson for the American Dental Association, recently stated: "**Just because something is popular doesn't mean it's safe**."[29]

52.     Active Wow has successfully leveraged both the charcoal and detox trends as well as consumer enthusiasm for teeth whitening with its development, marketing, and sales of its Charcoal Tooth Products in its line of oral care products containing activated charcoal.

**B.     Contemporary Scientific Studies Challenge the Safety and Efficacy of Activated Charcoal for Use in Dentifrice**

53.     The first use of charcoal for oral hygiene dates back to Hippocrates in ancient Greece.[30] The Romans apparently followed this practice, along with other questionable oral care practices such as rinsing their mouths with urine.[31]

54.     In the United States, there have been several attempts to introduce charcoal as an oral health product. According to commentary published in the Journal of the American Dental Association ("JADA") in 1932, a product named "Kramer's Original Charcoal Dental Cream," had been pronounced "not acceptable" as an Accepted Dental Remedies (ADR) by the Council on Dental Therapeutics (the "Council"). The Council found that "[c]linical experiences are recorded in which the particles of charcoal became imbedded in the gum tissue and produced a bluish line near the margin, which is removable only by surgical means."[32] When the Kramer's brand

---

[28] Marco Antonio Dias da Silva & Anthony Damien Walmsey, "Fake News and Dental Education," 226 *British Dental Journal* 397, 397-99 (2019).

[29] "Beware Whitening Promise of Charcoal Toothpastes," The Family Dental Center, Mar. 2019, [https://thefamilydentalcenter.com/blog/beware-whitening-promise-of-charcoal-toothpastes/]. (emphasis added).

[30] *See* S.W.B. Newsom, "Hygiene and the Ancient Romans," *J. of Infection Prevention*, at 25, June 2004 [https://journals.sagepub.com/doi/abs/10.1177/14690446040050030601].

[31] C. Valerius Catullus, "On Egnatius of the White Teeth," circa B.C. 84–54, (Tr. Richard Francis Burton, 1894), [http://www.perseus.tufts.edu/hopper/text?doc=Perseus:text:1999.02.0005:poem%3D39] (poem by the Roman poet Catullus referring to the practice of whitening teeth by rinsing with urine).

[32] John K. Brooks et al., "Commentaries: More on Charcoal and Charcoal-Based Dentifrices," 148 JADA 785 (2017), [http://dx.doi.org/10.1016/j.adaj.2017.09.027] (quoting S.M. Gordan, "Kramer's Original Charcoal Dental Cream: not acceptable for A.D.R.," 33 *JADA* 912, 912–13 (1946)).

produced no evidence to rebut the clinical results, the Council denied it as an ADR "**because it is a dentifrice intended for daily use that contains charcoal, a potentially harmful substance**."[33]

55.    Decades after American dentistry rejected charcoal for use in dentifrice, the topic has again resurfaced, in light of the burgeoning consumer trend. One study, presented at the Academy of General Dentistry 2015 Annual Meeting, concluded that "activated charcoal was more abrasive than a whitening toothpaste on acrylic resins" and warned that "[t]he fine black charcoal powder may become embedded in defects such as margins or cracks present on older dentition."[34]

56.    In 2017, the Journal of the American Dental Association published a literature review to "examine the efficacy and safety of charcoal and charcoal-based dentifrices." John K. Brooks et al., *Charcoal and Charcoal-Based Dentifrices*, 148 JADA 661 (2017) (referred to herein as "*Charcoal-Based Dentifrices* (JADA 2017)" or "the 2017 JADA article"). The authors, Dr. John Brooks, DDS, Dr. Nasir Bashirelahi, PhD, and Dr. Mark A. Reynolds, DDS, PhD, reviewed the first 50 consecutive charcoal dentifrices from Google.com and Amazon.com to assess how the marketing claims of these products compared with efficacy and safety of charcoal-based dentifrices as found in the available scientific literature.[35]

57.    The authors of *Charcoal-Based Dentifrices* (JADA 2017) reviewed advertising claims about the charcoal-based dentifrices on the market, and found: "Nearly one-half of the charcoal-based dentifrices were advertised as being capable of detoxification, with most claiming to detoxify the oral cavity or teeth. **Our review failed to identify scientific support in the**

---

[33] *Id.*
[34] Brantley McCarty et al., "Activated Charcoal as a Whitening Dentifrice," Presented at Academy of General Dentistry 2015 Annual Meeting, June 18–21, 2015, San Francisco, CA [https://www.epostersonline.com/agd2015/node/72] (last accessed June 5, 2019).
[35] John K. Brooks et al., "Charcoal and Charcoal-Based Dentifrices," 148 *JADA* 661 (2017).

literature that topical application of charcoal can provide any detoxification benefits to the teeth or oral mucosa."[36]

58.     The authors of the 2017 JADA article additionally reported that "**[c]harcoal has been recognized as an abrasive mineral to the teeth and gingiva, and its inclusion in tooth preparations raises concern about damage to these oral structures, as well as increasing caries susceptibility due to the potential loss of enamel**."[37]

59.     In conclusion, the authors of *Charcoal-Based Dentifrices* (JADA 2017) stated:

> In our literature review, **we found insufficient scientific evidence to substantiate the cosmetic, health benefits** (antibacterial, antifungal, or antiviral; **reduced caries; tooth whitening; oral detoxification**), **or safety claims** of marketed charcoal-based dentifrices. Controlled clinical trials and laboratory investigations of charcoal-based dentifrices . . . are needed to determine product efficacy and safety.[38]

60.     In May 2019, the BDJ confirmed that supporting scientific evidence remained lacking, and again raised the same and similar concerns reflected in the 2017 JADA article. Linda H. Greenwall et al., *Charcoal-Containing Dentifrices*, 226 BDJ 697, 698 (2019) (referred to herein as "*Charcoal-Containing Dentifrices* (BDJ 2019)" or "the 2019 BDJ article"). It further noted the tendency for build up of charcoal particles in surface defects, fissures, and gumline, and resulting poor aesthetic effects.[39]

61.     The May 2019 article in the British Dental Journal, *Charcoal-Containing Dentifrices* (BDJ 2019), concluded that charcoal-based dentifrices "may be considered to be **a fashionable, marketing 'gimmick'**" that is "based on folklore on the use of different forms of

---

[36]*Id.* (emphasis added). The authors were unable to identify any randomized, controlled clinical trials with a follow-up duration of 3 months or longer testing the safety or effectiveness of charcoal-based dentifrices. All of the available studies lacked adequate controls to measure clinical oral improvements with charcoal-based dentifrices.

[37]*Id.* (emphasis added).

[38]*Id.* (emphasis added).

[39]*Id.*

charcoal for oral and dental remedies," or improperly based on "present day uses of charcoal for medical purposes."[40] The 2019 BDJ article lamented the prevalent and "**worrying approach**" in the marketing of charcoal dentifrices that places "a strong emphasis on benefits which appeal to consumers, which have yet to be disproved," and that favor a "'scientifically claimed until proved wrong' approach . . . over substantiated, evidence-based promotion."[41] The authors opined that "**the ethics of such an approach to the marketing of health-influencing products is at best questionable**. **False and deceptive messaging, together with the selective provision of information could be classed as misleading practice, contrary to the consumers' best interests and protection**."[42]

### C. The American Dental Association has Not Approved any Activated Charcoal Dentifrice for its ADA Seal of Acceptance

62.     The American Dental Association ("ADA") was founded in 1859.[43] Per the ADA's description of its mission, the ADA "exists to power the profession of dentistry and to assist our members in advancing the overall oral health of their patients."[44] ADA presents itself as a "strong advocate[] for public health" working with an aim to keep patients "healthy from the dental chair to daily care at home."[45]

63.     In furtherance of the ADA's public health goals, the organization administers the ADA Seal of Acceptance Program ("Seal Program"), which began in 1931.[46] The ADA established its Seal Program to combat "extravagant claims" about what dental products could do.[47] Since that

---

[40] Linda H. Greenwall et al., "Charcoal-Containing Dentifrices," 226 *British Dental Journal* 697, 698 (2019).
[41] *Id.* (emphasis added).
[42] *Id.* (emphasis added).
[43] https://www.ada.org/en/about-the-ada/ada-history-and-presidents-of-the-ada (last accessed November 18, 2019).
[44] https://www.ada.org/en/about-the-ada (last accessed November 18, 2019).
[45] *Id.*
[46] https://www.ada.org/en/science-research/ada-seal-of-acceptance (last accessed November 18, 2019).
[47]  https://www.ada.org/en/science-research/ada-seal-of-acceptance/ada-seal-faq, "What is the ADA Seal?" (last accessed November 18, 2019).

time, the ADA Seal of Acceptance has become "[u]niversally recognized by consumers as a symbol of safety and effectiveness" and "is carried on more than 300 oral health products, including toothpastes, toothbrushes, dental floss, mouth rinses, denture adherents, and chewing gum."[48] Companies can submit dental products to the Seal Program by including "data from clinical or laboratory studies that demonstrate safety and efficacy according to product category requirements developed by the ADA Council on Scientific Affairs."[49] Members of the ADA Council review submissions for adherence to product category requirements and, if necessary, utilize consultants with relevant specific area expertise.[50] Once a product's safety and efficacy has been demonstrated, the ADA Council will award the Seal of Acceptance.[51]

64.    A variety of major brands have sought and received the ADA Seal of Acceptance for certain products, including, but not limited to, Crest, Efferdent, ACT, CVS, Equate (Walmart), Listerine, Up and Up (Target), Oral-B, and Colgate.[52] **Significantly, the ADA has not granted the ADA Seal of Acceptance to any product with activated charcoal**.[53]

65.    Defendant has not received the ADA Seal of Acceptance for any of its Active Wow Charcoal Tooth Products.[54] Based upon the prevailing scientific literature regarding the lack of substantiation on safety and efficacy of activated charcoal in dental products, and the known risks and abrasiveness of charcoal, Active Wow would have or should have been aware of the

---

[48] https://www.ada.org/en/about-the-ada (last accessed November 18, 2019).
[49] https://www.ada.org/en/science-research/ada-seal-of-acceptance/ada-seal-faq, "What determines if a dental product qualifies for the Seal?" (last accessed November 18, 2019).
[50] https://www.ada.org/en/science-research/ada-seal-of-acceptance/ada-seal-faq, "How are products evaluated?" (last accessed November 18, 2019).
[51] *Id.*
[52]  https://www.ada.org/en/science-research/ada-seal-of-acceptance/ada-seal-shopping-list (last accessed November 18, 2019).
[53]  *See*  https://www.ada.org/en/science-research/ada-seal-of-acceptance/ada-seal-shopping-list (last accessed November 18, 2019).
[54]  https://www.ada.org/en/science-research/ada-seal-of-acceptance/ada-seal-shopping-list (last accessed November 18, 2019).

unsuitability of the ADA Seal of Acceptance for its Charcoal Tooth Products. Nevertheless, it has chosen to make the exact sort of false, deceptive, and/or misleading extravagant claims that inspired the creation of the ADA's Seal Program.

**D.    Active Wow's Representations on the Charcoal Tooth Products' Labeling, Packaging, Advertising and Marketing**

66.    Since at least 2016, Defendant has packaged, marketed, distributed, and sold some or all of its Active Wow Charcoal Tooth Products.

67.    Examples of the product jars and packaging include:













68.    Printed on the packaging for each of the Active Wow Charcoal Tooth Products

statement: "**Enjoy a whiter, healthier smile, the natural way!**"

69.    Examples of the toothpaste tubes and packaging include:



70.    Examples of the marketing claims and imagery used to market the Charcoal Tooth Products online include:











**E.    The Claimed Benefits of the Charcoal Tooth Products are Materially Misleading and are Debunked or Unsubstantiated by Scientific Evidence, Impossible and/or Untrue**

**(i)    *Detoxifying and Adsorbing***

71.    As previously described, Active Wow consistently touts its Charcoal Tooth Products as purifying, detoxifying, and possessive of adsorptive properties that purportedly effectuate cosmetic and oral health benefits. For example, Active Wow's marketing claims made online include that the ingredient activated charcoal "purifies and detoxifies" and "detoxifies your mouth" and that "activated charcoal works by pulling stains off your teeth through a process 'adsorption.'" On its website Active Wow states that the activated charcoal in its 24K White Toothpowder "works by drawing stains out from your teeth while detoxifying the mouth."

72.    In the FAQ section of its website, Active Wow presents a section titled "What is Activated Charcoal? Great Question!" and therein explains that activated charcoal is "porous and adsorbent," and "is a natural treatment used to absorb toxins and chemicals to clean and purify your teeth." Another section titled "Why Activated Charcoal? 'Cause Why Not!" states that activated charcoal "is quite sticky which is perfect for teeth whitening since it sticks to particles that are responsible for staining your teeth and removes them. . . . [and] is very effective for [. . .] detoxifying your mouth. . . ."

73.    In reality, Active Wow's claims are specious and make misuse of the term "detoxification." As previously discussed, detoxification is a *medical term* that refers to emergency treatments for dangerous levels of drugs, alcohol, or poisons, like heavy metals.[55] Moreover, there are no clinical trials or peer reviewed research which suggests activated charcoal removes toxins

---

[55]    Scott Gavura, "Activated Charcoal, The Wellness Scam," *Science Based Medicine*, Aug. 8, 2019 [https://sciencebasedmedicine.org/activated-charcoal-the-wellness-scam/ ].

daily when used as a supplement."[56] "Despite the marketing hype, activated charcoal has no ability to suck out the toxic chemicals from the rest of your body."[57]

74.    Even more implausible than the 'detoxifying' effects of ingestible charcoal supplements, are purported 'detoxifying' properties in topically applied personal care products containing charcoal, such as dentifrice. The logic of employing charcoal in this context is even more attenuated and is, in fact, *wholly unsupported*. As one wellness writer has put it:

> "**At the root of the activated charcoal health fad is the misuse, or misunderstanding, of the word 'toxin.'** In a detox-crazy world, toxins are used to refer to impurities or anything undesirable in your body: **stains on your teeth**, dirt or dust on your skin, naturally present sugars in your juice, a hangover after a night out. **Personal care products (like teeth whiteners**, face masks, soaps, shampoos, and deodorants) containing activated charcoal **bank on the idea that impurities can be draw out during use**. . . But **there is little to no research to prove that the trace amounts of activated charcoal, combined with other ingredients, in these products are effective and much more than just marketing**."[58]

75.    Despite the lack of reasonable basis or credible, scientific and clinical substantiation, Active Wow extols the benefits and functions of charcoal as an adsorptive detoxifier on its website and on Amazon.

76.    Active Wow's detoxification claims are a marketing gimmick with no basis in fact. Very similar claims have been assessed by dental experts and determined to be unsupportable (see, e.g., the 2017 JADA and 2019 BDJ articles). Put simply, **there is no scientific support "that topical application of charcoal can provide any detoxification benefits to the teeth or oral**

---

[56] "Activated Charcoal Uses May Be Harmful, Possibly Cancerous?," Superfoodly (July 28, 2017) [https://www.superfoodly.com/activated-charcoal-uses-side-effects/]; Scott Gavura, "Activated Charcoal, The Wellness Scam," *Science Based Medicine*, Aug. 8, 2019 [https://sciencebasedmedicine.org/activated-charcoal-the-wellness-scam/ ]; Julia Calderone, "Activated Charcoal Isn't a Magic Health Bullet," Consumer Reports (April 13, 2017) [https://consumerreports.org/dietary-supplements/activated-charcoal-fad-not-a-magic-health-bullet/].

[57] Scott Gavura, "Activated Charcoal, The Wellness Scam," *Science Based Medicine*, Aug. 8, 2019 [https://sciencebasedmedicine.org/activated-charcoal-the-wellness-scam/ ].

[58] Katie Mui, "Activated Charcoal: The Powerful Detox Ingredient You Don't Want in Your Regular Diet," GoodRx, Feb. 7, 2019 [https://www.goodrx.com/blog/what-is-activated-charcoal-detox-medication-interactions/]. (emphasis added).

mucosa."[59] **This includes "antibacterial, antifungal, or antiviral" benefits, as well as reduced caries or a more general (and ill-defined) notion of "oral detoxification**."[60] And, to the extent charcoal-based dentifrices do appear to effectuate certain purported oral hygiene or aesthetic benefits, it is not its porousness, but rather the *high abrasiveness* of the charcoal particle that enables any seemingly positive results, and in a short-sighted and risky manner.

      **(ii)**     *Naturally Whitening*

77.     Active Wow promotes its Charcoal Tooth Products as "naturally" whitening, "free from chemicals," and safer and healthier than whitening teeth through other methods. It presents the charcoal as the ingredient effectuating whitening results, with statements such as: "Our naturally brilliant formula whitens your teeth with the power of activated coconut charcoal" and "Active Wow naturally whitens your teeth, not through harsh dental-grade whitening peroxides, but through the power of Activated Charcoal, nature's best purifier and detoxifier" and "Activated Charcoal: Teeth Whitening Redefined. Simple, Natural Ingredients."

78.     When a toothpaste or toothpowder is advertised as whitening, most reasonable consumers believe it will leave their teeth whiter. However, dentists and researchers have warned that charcoal dentifrice companies' whitening claims are misleading, due to the failure to clarify the distinction between intrinsic and extrinsic whitening mechanisms. As opposed to intrinsic whiteners, the British Dental Journal explains, many "products whiten teeth, to different extents, by the removal of surface (extrinsic) stains, which may reform relatively quickly in, for example, a smoker. Typically, these products do not change the intrinsic colour of the tooth, which is largely determined by the colour of the dentine."[61]

---

[59] John K. Brooks et al., "Charcoal and Charcoal-Based Dentifrices," 148 *JADA* 661 (2017).
[60] *Id*.
[61] Linda H. Greenwall et al., "Charcoal-Containing Dentifrices," 226 *British Dental J.* 697, 699 (2019).

79.     Linda Greenwell, in her 2017 article *Charcoal Toothpastes: What We Know So Far*, concluded: "[t]here is no evidence that the use of charcoal toothpaste has an effect on intrinsic (internal) staining of teeth or on intrinsic whitening of the teeth."[62] In 2019 Ms. Greenwell, as co-author *Charcoal-Containing Dentifrices* (BDJ 2019), re-affirmed the conclusion that activated charcoal "does not change the colour of the teeth other than by abrasive action similar to that of a 'smoker's toothpaste'. . . ."[63] "The common interchangeable use and misuse of the terms 'whitening' and 'bleaching' is therefore misleading and confusing to consumers and patients, with the marketing of some charcoal and other dentifrices being no exception."[64]

80.     The Active Wow Charcoal Tooth Products do not intrinsically whiten teeth. As such, any claimed whitening properties of the Active Wow Charcoal Tooth Products are limited to the removal of extrinsic surface stains, and therefore misleading.[65]

81.     Active Wow's whitening claims are also deceptive for the additional reason that it presents the Charcoal Tooth Products as possessive of "natural" whitening qualities due to the unique and inherent attributes of activated charcoal; as Active Wow puts it, that whitening is effectuated by "drawing stains out from your teeth" or "pulling stains off your teeth" through "a process called adsorption."

82.     This is misleading and deceptive. Charcoal functions as an abrasive agent. Its composition and fractal-shaped particles make it highly abrasive to tooth enamel.[66] As such, any extrinsic stain-lifting that could be viewed as 'whitening' is achieved simply by mechanical

---

[62] Linda Greenwall & Nairn H.F. Wilson, Opinion, "Charcoal Toothpastes: What We Know So Far," *Clinical Pharmacist* (July 13, 2017) [https://www.pharmaceutical-journal.com/opinion/correspondence/charcoal-toothpastes-what-we-know-so-far/20203167.article?firstPass=false].
[63] Linda H. Greenwall et al., "Charcoal-Containing Dentifrices," 226 *British Dental J.* 697, 699 (2019).
[64] *Id*.
[65] John K. Brooks et al., "Charcoal and Charcoal-Based Dentifrices," 148 *JADA* 661 (2017).
[66] *See, e.g.*, Matthias Epple et al., "A Critical Review of Modern Concepts for Teeth Whitening," 79 *Dentistry J*., 7 (Aug. 1, 2019) [https://www.mdpi.com/2304-6767/7/3/79/htm].

abrading of extrinsic stains, and is *not achieved from adsorptive qualities of the charcoal*; rather it is achieved by the *particularly abrasive effects of the charcoal*.

83.    Put another way, the Active Wow's Charcoal Tooth Products "work" to "whiten" teeth by abrading away the stains and deposits having the charcoal particles scrape off the surface of the teeth, i.e. the tooth enamel. The adsorptive qualities of charcoal are irrelevant in the context of purported teeth whitening, and Active Wow's representations in this regard are misleading and deceptive, similarly to its frivolous 'detoxifying' claims.

84.    Abrasive ingredients are commonly used in dentifrice and function to mechanically lift extrinsic stains, reduce the adhesion of dental biofilms and chromophores from the enamel surface, and otherwise improve discoloration and clean the teeth. However, there are numerous commonly accepted and widely used abrasives that are effective and much milder than charcoal, and have undergone clinical testing as well as ADA scrutiny. There are no long-term clinical studies of the effects of its use, and charcoal (which is particularly due to its unique particle shape and composition) is not in the ADA-approved list of abrasives.

85.    Lastly, and arguably at worst, consumer experience and dental expert opinions alike indicate that long-term use of abrasive charcoal in dentifrice such as the Active Wow Charcoal Tooth Products can potentially result in a darkened and yellow tooth appearance. This is because, when teeth are regularly brushed with highly abrasive substances such as charcoal, the enamel can wear down and cause the tooth's dull, internal dentin to show through.[67] As Dr. Ada Cooper, spokesperson for the American Dental Association, has explained: "Using materials that are too abrasive can actually make your teeth look more yellow, because it can wear away the tooth's

---

[67] John K. Brooks et al., "Charcoal and Charcoal-Based Dentifrices," 148 *JADA* 661 (2017) ("Charcoal has long been recognized as an abrasive mineral to the teeth and gingiva, and its inclusion in tooth preparations raises concerns about damage to these oral structures, as well as increasing caries susceptibility due to the potential loss of enamel.").

enamel and expose the softer, yellower layer called dentin."[68] Furthermore, the removal of enamel by abrasive whitening dentifrices not only exposes the yellowish dentin, but also causes teeth to stain even more easily in the future – with the sensitive dentin exposed and no longer protected by enamel.

**(iii)**  *Safe, gentle and effective, and otherwise adequate for daily, long-term dental hygiene use*

86.     Defendant has printed instructions for use on the Active Wow Charcoal Toothpowder Products' product packaging: "Gently brush teeth for one to two minutes. Rinse Thoroughly. Use once or twice daily." The instructions for use printed on the package of the 24K White Charcoal Toothpowder are materially the same: "Gently brush teeth for 1-2 minutes. Rinse thoroughly and spit close to the drain with water running. Use once or twice daily." The instructions on the Activated Coconut Charcoal Toothpaste state: "Use at least a 1-inch strip on your toothbrush and gently brush for 1-2 minutes. Rinse thoroughly. Brush twice a day for best results. Share your new smile with everyone."

87.     In marketing materials online, materially identical instructions are made, as well as additional statements concerning product, that include: "hassle free, brush like normal" and "Active Wow charcoal powder is a great replacement for regular toothpaste."

88.     The packaging instructions and marketing statements send the message that consumer use of the Charcoal Tooth Products should approximate a regular brushing routine and that the products are appropriate for a consumer to use as their primary everyday source of oral hygiene. Defendant promises the claimed benefits will come from this regular use "over time," and that customers will enjoy a "whiter, healthier smile," the "smartest" and "natural way."

---

[68] "Beware Whitening Promise of Charcoal Toothpastes," The Family Dental Center, Mar. 2019, [https://thefamilydentalcenter.com/blog/beware-whitening-promise-of-charcoal-toothpastes/].

89.     Defendant promotes the Charcoal Tooth Products as "Safe to Use."

90.     On the packaging of the 24K White Charcoal Toothpowder appear logos and stamps that state: "Gentle & Effective" and "3rd Party Tested for Enamel Safety."

91.     In its online marketing for the Charcoal Tooth Products on both ActiveWow.com and Amazon.com, Defendant makes several claims regarding the safety of the Charcoal Tooth Products, including, but not limited to, the following: "excellent for gum health," "no sensitivity," "safe to use," "easy on your gums," "gentle on enamel," "enamel safe," "suited for anyone to use them without any ill-effects."

92.     To further bolster the credibility of its claims and the trustworthiness of the brand, Active Wow's messaging conveys that the brand is extremely conscientious of health, safety and wellbeing. For example, in addition to the safety claims and purported certification of third party testing for enamel safety, the packaging of the 24K White Charcoal Toothpowder includes logos and stamps that state: "All Natural," "Peroxide-Free," and "Made in USA." On its website, Active Wow includes logos indicating: "Cruelty-Free," "Sulfate-Free," "Paraben-Free," "Not Tested on Animals," "Organic When Possible," and "Made in the USA." It consistently touts its ingredients as derived from natural sources, and without the use of artificial ingredients or chemicals. Active Wow makes all these claims in order to induce confidence, trust, reliance and purchase by consumers.

93.     Active Wow solicits consumer trust in the brand with statements such as: "Active Wow started with one goal in mind – to help spread happiness through smiles."; "We're a new kind of beauty company, created by a small team that cares."; and "We're for real, and so are our products."

**(iv)**    *Abrasive damage to teeth, enamel, and gums*

94.    While it promotes the safety, gentleness, and even purported third-party testing for enamel safety, Active Wow also fails to disclose material facts, such that activated charcoal has *not* been substantiated as safe and effective for use in dentifrice, and both JADA and the BDJ have confirmed insufficient scientific evidence to substantiate safety claims (as well as cosmetic and health benefits) as well as raised concerns about risks associated with the use of charcoal dentifrices.

95.    Activated charcoal is known to be a highly abrasive and harmful substance to tooth enamel.[69] Multiple scientific studies have noted its abrasiveness presents a risk to enamel and gingiva in the context of oral care products. As noted in the 2017 JADA article: "[c]harcoal has been recognized as an abrasive mineral to the teeth and gingiva, and its inclusion in tooth preparations raises concern about damages to these oral structures, as well as increasing caries susceptibility due to the potential loss of enamel."[70] The 2019 BDJ article again noted the risk to enamel and gingiva posed by charcoal's abrasivity.[71]

**(v)**    *Oral health effects from abrasive damage*

96.    Moreover, the abrasive damage to tooth enamel caused by charcoal can set the stage for spiraling into additional oral health issues. It has been shown that increased surface roughness of teeth creates an environment conducive to increased bacteria in the oral cavity. This, in turn, can lead to other problems and is correlated with high caries and periodontal disease.

---

[69] *See, e.g.*, John K. Brooks et al., "Commentaries: More on Charcoal and Charcoal-Based Dentifrices," 148 *JADA* 785 (2017) [http://dx.doi.org/10.1016/j.adaj.2017.09.027] (quoting S.M. Gordan, "Kramer's Original Charcoal Dental Cream: not acceptable for A.D.R.," 33 *JADA* 912, 912–13 (1946)) (Concluding a charcoal dental cream was not an acceptable dental remedy "because it is a dentifrice intended for daily use that contains charcoal, a potentially harmful substance").

[70] John K. Brooks et al., "Charcoal and Charcoal-Based Dentifrices," 148 *JADA* 661 (2017).

[71] Linda H. Greenwall et al., "Charcoal-Containing Dentifrices," 226 *British Dental Journal* 697, (2019).

97.    On a general level, the optimal formulated tooth product maximizes cleaning while minimizing abrasiveness. The abrasives employed in a toothpaste should effectively polish teeth and remove biofilms and stains, but not abrade on the tooth structure itself. The findings of a controlled scientific study, published in a 2017 article, *Surface Changes of Enamel After Brushing with Charcoal Toothpaste*, confirmed that charcoal-based toothpastes are more abrasive and affecting on the surface roughness on a tooth as compared to other non-charcoal whitening toothpastes.[72] Charcoal's abrasiveness is related to its composition and its irregular "star shaped" particles.[73] The "research concluded that there were increasing surface roughness values of tooth surfaces after the use of toothpaste containing charcoal, and the increased surface roughness was statistically significant . . . ."[74] Increased surface roughness on a tooth's enamel is "a strategic place for bacteria to adhere to the tooth's surface," and "[t]he presence of bacteria in the oral cavity is one of the causes of high caries and periodontal disease risk."[75]

98.    Still more problematic, experts have noted that certain characteristics of Charcoal Tooth Products tend to prolong users' brushing time and increase brushing vigorousness, which can serve to *further exacerbate the abrasive effect* of charcoal dentifrices. The first such characteristic is the distinct black color of pastes containing charcoal. "Charcoal-containing toothpastes are black in colour and brushing off the colour tends to prolong brushing, or the use of excessive brushing force, which may lead to the abrasion of teeth."[76] The same phenomena occurs with dentifrices claimed to have 'whitening' properties, as consumers might brush more frequently

[72] U I Pertiwi et al., *Surface Changes of Enamel After Brushing with Charcoal Toothpaste*, IOP Conf. Series: Journal of Physics: IOP Conf. Series 884 (2017) [iopscience.iop.org] (doi:10.1088/1742-6596/884/1/012002).
[73] *Id*.
[74] *Id*.
[75] *Id*.
[76] Linda Greenwall & Nairn H.F. Wilson, Opinion, "Charcoal Toothpastes: What We Know So Far," *Clinical Pharmacist* (July 13, 2017).

and vigorously to achieve the desired whitening more quickly, not realizing that "excessive brushing with a charcoal-based dentifrice may cause more harm than good."[77]

    **(vi)**    *Negative aesthetic results*

99.    Studies also show bad aesthetic effects in some users. "Particles of charcoal included in charcoal toothpaste may accumulate in crevices and other defects in teeth, including cracks in the teeth of older individuals."[78] For "patients with established periodontal disease," the use of charcoal-based dentifrices may result in "the accumulation of charcoal particles deep in periodontal defects and pockets, causing grey/black discoloration of the periodontal tissues."[79]

100.    Studies have shown that the staining and discoloration caused by charcoal dentifrices can impact dental implants. When grey lines are created by the buildup of charcoal particles between dental restorations and teeth, it can ultimately "necessitate the costly replacement of the affected filings, veneers or crowns."[80]

    **(vii)**    *The replacement of widely accepted ingredients with charcoal (whose safety and efficacy has not been established) jeopardizes consumers' oral hygiene and oral health*

101.    Active Wow promises multiple oral hygiene benefits from regular use of the Charcoal Tooth Products and assigns unrealistic functions to untested and unsubstantiated ingredients in its charcoal formula, while leaving out other ingredients known to serve said function(s).

---

[77] Linda H. Greenwall et al., "Charcoal-Containing Dentifrices," 226 *British Dental Journal* 697, (2019). (emphasis added).

[78] Linda Greenwall & Nairn H.F. Wilson, Opinion, "Charcoal Toothpastes: What We Know So Far," *Clinical Pharmacist* (July 13, 2017).

[79] Linda H. Greenwall et al., *Charcoal-Containing Dentifrices*, 226 British Dental Journal 697, (2019).

[80] Linda Greenwall & Nairn H.F. Wilson, Opinion, "Charcoal Toothpastes: What We Know So Far," *Clinical Pharmacist* (July 13, 2017).

102.    In addition to the afore-described misleading and unsubstantiated claims concerning the charcoal ingredient, Active Wow makes health claims as to other ingredients in its charcoal formula. As to the ingredient bentonite clay, it states: "Bentonite is great for remineralizing your teeth due its high mineral content. It also absorbs toxins naturally, and is easy on your gums." Defendant also states that its orange seed oil ingredient "[h]elps to smooth your teeth whitening experience. It has numerous anti-inflammatory and antiseptic qualities." Active Wow describes the ingredient xylitol as "a powerful & tasty tooth protector" and claims it to have "tooth-decay and cavity-fighting properties."

103.    Active Wow provides no evidence for the numerous claimed benefits of its charcoal formula and the ingredients therein. The afore-mentioned scientific publications have reviewed similar marketing claims on charcoal dentifrices and found a lack of substantiation. Moreover, the 2017 JADA Article specifically raised concerns about bentonite clay, which was included many of the surveyed charcoal dentifrices, and questioned marketers' "stated purpose, effectiveness, and safety of bentonite clay."[81] JADA authors noted that "[r]eviews of adverse health effects of bentonite clay have been contradictory," and that the crystalline silica within bentonite clay "is regarded as a human carcinogen" when inhaled, "and its utility and safety in toothpaste have not been established."[82]

104.    Researchers have warned of this very type of situation when it comes to unproven and over-hyped health and safety claims about charcoal dentifrices. Extreme marketing tactics, broad and exaggerated marketing claims and deceptive and false promises, in the absence of disclosures of the truth about inadequate substantiation, cause consumers to purchase and use a

---

[81] John K. Brooks et al., "Charcoal and Charcoal-Based Dentifrices," 148 *JADA* 661 (2017).
[82] *Id.,* citing

charcoal dentifrice, often in lieu of a non-charcoal dentifrice that *has* in fact been established as safe and effective. As the 2019 BDJ article authors noted:

> "The unsubstantiated claims that certain charcoal-based dentifrices, any of which are described as eco-friendly, ecological, herbal, natural, organic or pure, have antibacterial, antiseptic and/or anti-fungal qualities, **may lull consumers into thinking that the use of such dentifrices may be a sustainable way to prevent or possibly even treat periodontal disease**, over and above whatever claims they are inclined to believe. Such persuasion of consumers, many of whom may have established oral and dental disease, is considered to be **opportunistic marketing, with little regard to the consequences of the exploitation**."[83]

105.     For example, the over-marketing of charcoal dentifrices can cause customers to abandon fluoride toothpastes for fluoride-free varieties, believing in purported oral health properties that do not exist. The authors of the 2019 BDJ article noted the "concerning [. . .] potential for individuals changing from the use of a regular fluoride-containing toothpaste to the use of a charcoal toothpaste which contains no fluoride, thereby increasing their risk of caries."[84] The authors of the 2017 JADA article also raised this concern, and advised that dentists should "educate their patients about the **unproven claims of oral benefits and possible health risks associated with the use of charcoal dentifrices and the potential increased risk of developing caries with the use of these nonfluoridated . . . products**."[85]

106.     The oral health benefits with which Active Wow promotes its Charcoal Tooth Products have not been substantiated. The charcoal formula in the Charcoal Tooth Products does not contain ingredients that have been proven safe and effective for said claims. These claims mislead reasonable consumers and result in the purchase and use of Charcoal Tooth Products, rather than purchase and use of dentifrices comprised of ingredients that *have* been tested and proven as safe and effective for the various purported oral health benefits claimed by Active Wow.

---

[83] *Id.*
[84] Linda H. Greenwall et al., *Charcoal-Containing Dentifrices*, 226 British Dental Journal 697, (2019).
[85] *Id*. (emphasis added).

### F. Active Wow Knew or Should Have Known its Material Claims and Omissions on Whitening Effects, Detoxifying/Adsorptive Properties, Oral Hygiene and Benefits and Safety were Misleading, Deceptive and/or False

107.    Active Wow's Charcoal Tooth Products are subject to a legal and regulatory framework concerning the marketing, advertising, branding, and labeling of drugs and cosmetics.[86]

108.    The Charcoal Tooth Products are classified as cosmetics, drugs, or a combination thereof. As such, Active Wow has legal duties that include but are not limited to: (i) to ensure the safety of the Charcoal Tooth Products; (ii) to disclose risks of use and safety hazards; (iii) to ensure the advertising claims and the label and packaging of the Charcoal Tooth Products are not misleading or deceptive in their claims and omissions, and (iv) to possess adequate and credible substantiation for its claims.

109.    These obligations were created and are governed by, *inter alia*, the Federal Trade Commission Act (15 U.S.C. § 41 *et seq.*) ("FTC Act"), as well as the Federal Food, Drug and Cosmetic Act (21 U.S.C. §321 *et seq.*) ("FD&C Act"), the Fair Packaging and Labeling Act (15 U.S.C. §1451 *et seq.*) ("FP&L Act") and the regulatory frameworks created thereunder. Such laws were created in the aim to protect consumers from unfair and deceptive practices (including unsafe or deceptively labeled or packaged products), as well as to protect against unfair competition.

110.    Similarly, multiple state laws have statutes that incorporate and/or mirror pertinent portions of federal regulatory framework. For example, California's Sherman Law adopts pertinent FDA regulations on food, drugs and cosmetics.

111.    In this pleading, Plaintiffs acknowledge Active Wow's obligations and duties under this federal and parallel state frameworks for purposes related to the elements of the common law

---

[86] Dentifrices, such as toothpastes and toothpowders sold by Active Wow, can be classified as cosmetics, drugs, or a combination thereof under the federal framework. The Charcoal Tooth Products are "cosmetics," as defined in the FTC Act and the FD&C Act. To the extent there are claims concerning disease, such as fighting or preventing cavities (anticaries claims), they potentially qualify as drugs as well.

and state statutory causes of action asserted herein (such as the existence of various legal duties and obligatory standards of care, the existence of a special relationship, as well as to underscore that Active Wow knew or should have known of its noncompliance and that its conduct was wrongful). Plaintiffs expressly disclaim any attempt to hold Active Wow to a higher standard than that which is required under federal law, and does not seek relief or remedy for conduct to a standard exceeding that which is required under federal law.[87]

112.    As a company engaged in the interstate marketing, distribution and sale of its Charcoal Tooth Products, Active Wow was or should have been aware of its legal duties under federal and state laws, as well as the regulatory frameworks built thereunder.

**The FTC Act and FTC regulations**

113.    Section 5 of the FTC Act broadly prohibits unfair and deceptive trade practices (15 U.S.C. § 45), and Section 12 of the FTC Act prohibits the dissemination of false and misleading advertisement of food, drugs, and cosmetics (15 U.S.C. §§ 52).[88]

114.    The FTC requires advertisers to possess a reasonable basis for their advertising and marketing claims.[89] Claims concerning health and safety must be supported by competent and reliable scientific evidence.

115.    The FTC requires that an advertiser substantiate its claims (express and implied) *before* it disseminates said claims, and, when an advertiser actually conveys to a consumer

---

[87]    The allegations concerning conduct that violates the FD&C Act, the FTC Act, regulations thereunder, and/or California's Sherman Law regulations (or other parallel state laws), as raised herein, are properly asserted in the context of the causes of action and relief sought herein, and are not barred by preemption.

[88] For purposes of Section 12 of the FTC Act, classification as a "drug" or "cosmetic" is based on the definitions at Section 15 (c) and (e) of the FTC Act, 15 U.S.C. § 55(c), (e).

[89]    The FTC requires companies to "have a reasonable basis for advertising claims before they are disseminated, and "a firm's failure to possess and rely upon a reasonable basis for objective claims constitutes an unfair and deceptive act or practice in violation of Section 5 of the Federal Trade Commission Act. . . ." *See* FTC Policy Statement Regarding Advertising Substantiation, appended to *In the Matter of Thompson Medical Co.,* 104 F.T.C. 648, 839 (1984), *aff'd,* 791 F.2d 189 (D.C. Cir. 1986).

(expressly or impliedly) that it has certain level of support or evidence for its products, it must have such substantiation *to the actual level* it claims to possess.

### The FD&C Act and FDA regulations

116.    The FD&C Act (21 U.S.C. § 321 *et seq*.) prohibits the marketing and movement in interstate commerce of adulterated or misbranded food, drugs and cosmetics.[90]

117.    The FD&C Act provides that a drug or a cosmetic will be considered misbranded for numerous potential reasons, including if the drug or cosmetic's "[] labeling is false or misleading in any particular." 21 U.S.C. § 352(a) (misbranded drugs[91]); 21 U.S.C. § 362(a) (misbranded cosmetics). Labeling may be deemed misleading not only because a label statement is deceptive in its representations, and also when a material fact is not revealed on a label. 21 CFR 1.21. As to the latter, labeling is deemed misleading if it fails to reveal facts that are material in light of other representations, or material with respect to the consequences resulting from the intended use of the product. 21 CFR 1.21 (Failure to reveal material facts).

118.    A cosmetic is also considered misbranded if its safety has not been adequately substantiated, and it does not conspicuously bear the statement: "**Warning – The safety of this product has not been determined**." 21 CFR 740.10. The safety of a cosmetic may be considered adequately substantiated if experts qualified by scientific training and experience can reasonably conclude from the available toxicological and other test data, chemical composition, and other

---

[90]    The FD&C Act defines "drug" and "cosmetic" at 21 USC §321(g)(1) and 21 USC §321(i), respectively. The Charcoal Tooth Products at issue qualify as cosmetics, as they are fluoride-free and are intended to be applied to the human body for cleansing, beautifying, promoting attractiveness, or altering the appearance.
[91]    The FDA labeling requirements for over-the-counter (OTC) anticaries drug products, for example, are specific and numerous, as well as generally prohibitive of misbranding that might mislead the consumer. See, e.g., 21 CFR 355.50 (Labeling of anticaries drug products) and 21 CFR 330.1 (General conditions for general recognition as safe, effective and not misbranded).

pertinent information that the product is not injurious to consumers under conditions of customary use and reasonably foreseeable conditions of misuse.[92]

**California's Sherman Law and regulations of the California Department of Health**

119.    California's Sherman Food, Drug & Cosmetic Law (California Health & Safety Code §§ 109875 et seq.) (the "Sherman Law") adopts, mirrors and parallels the FD&C Act and pertinent regulations.

120.    Section 110111 adopts all FDA regulations on nonprescription drugs as state regulations.

121.    Section 111730 of the Sherman Law specifically concerns cosmetics, and provides: "Any cosmetic is misbranded if its labeling is false or misleading in any particular." The identical conduct violates Section 602 of the FD&C Act, which declares cosmetics misbranded under federal law "if its labeling is false and misleading in any particular." 21 U.S.C. § 362(a).  Plaintiffs does not seek to enforce any state law claims to impose any standard of conduct that might excluded that which would violate the FD&C Act or FDA regulations.

122.    Additional pertinent California regulations of the California Health & Safety Code include:

    a.  Section 11290 (providing that, in determining whether the labeling or advertisement of a food, drug, device, or cosmetic is misleading, all representations made or suggested by statement, word, design, device, sound, or any combination thereof; and that a failure to reveal facts concerning the product, or consequences of customary use of the product, shall also be considered);

    b.  Section 110390 (making it unlawful to disseminate any false advertisement of any food, drug, device, or cosmetic; and providing that an advertisement is false if it is false or misleading in any particular);

---

[92] *See, e.g.*, FDA Cosmetic Labeling Guide, https://www.fda.gov/cosmetics/cosmetics-labeling-regulations/cosmetics-labeling-guide.

    c. Section 110395 (making it unlawful to manufacture, sell, deliver, hold, or offer for sale any food, drug, device, or cosmetic that is falsely advertised);

    d. Section 110398 (making it unlawful to advertise any food, drug, device, or cosmetic that is adulterated or misbranded);

    e. Section 110400 (making it unlawful to receive in commerce or to deliver any food, drug, device, or cosmetic that is falsely advertised);

    f. Section 111730 (providing that a cosmetic is misbranded if its labeling is false or misleading in any particular);

    g. Section 111735 (providing that a cosmetic is misbranded if its labeling or packaging does not conform to the requirements of Chapter 4 regulations on Packaging, Labeling, and Advertising, commencing with Section 110290); and

    h. Section 111745 (providing a cosmetic is misbranded if any word, statement, or other information that is required is not prominently and conspicuously placed upon the labeling).

123.    As a company engaged in the interstate marketing, distribution and sale of its Charcoal Tooth Products, Active Wow was or should have been aware of its legal duties under these laws, as well as the regulatory framework built thereunder. Active Wow's legal duties include but are not limited to: (i) to ensure the safety of the Charcoal Tooth Products; (ii) to disclose risks of use and safety hazards; (iii) to ensure the advertising claims and the label and packaging of the Charcoal Tooth Products are not misleading or deceptive in their claims and omissions; (iv) to possess adequate and credible substantiation for its claims; and (v) to disclose the lack of substantiation, particularly for safety.

124.    Defendant Active Wow was, or should have been, aware of its obligations under the above-described legal and regulatory framework, yet appears to have disregarded its duties as to claim substantiation, safety, marketing and advertising, as well as to product packaging and labeling. This further underscores that it knew or should have known its acts and practices were also unlawful under state consumer protection laws.

125.    This further underscores that Active Wow knew or should have known its acts and practices were also unlawful under state consumer protection laws.

126.    The above-described regulatory frameworks also serve to underscore the existence of a duty to disclose.

127.    Additionally, the above-described regulatory frameworks serve to bolster the premise that a special relationship existed between Active Wow and the general public of consumers, including CA Subclass members. The special relationship was created by merit of the fact that Active Wow held itself out and made claims on oral health benefits and safety – claims it knew were regulated – and that were of a certain nature requiring specialized knowledge or expertise a reasonable consumer would not possess. These claims were material to consumers' decision to purchase as well as to their personal dental hygiene and maintenance of oral health.

128.    Defendant Active Wow knew or should have known that it did not possess the legally required substantiation for its claims.

129.    Defendant also knew, or should have known, that the Charcoal Tooth Products did not possess the promised benefits and safety, and that there was risk of harm. Scientific studies and journals that contradicted many of Active Wow's claims were published and available to Active Wow at the time it disseminated its claims and marketing content.

130.    Moreover, Active Wow would not have even had to look to academic or scientific resources, because the scientific findings were also reported in consumer reports and mainstream media outlets during the time the Charcoal Tooth Products were developed, marketed and sold. Examples include:

- ABC News, June 2017, *How Safe is Activated Charcoal?* reports concerns of Dr. Upen Patel, D.D.S., because charcoal dentifrices are not evaluated by the ADA for long term use, can erode enamel, abrasiveness, gums, and tissue, and the small charcoal particles "can get

stuck in your gums and in small cracks in your teeth, so you can have these little black lines in your gums and your teeth you can't get out."[93]

- Prevention.com, September 2018, *Is Charcoal Toothpaste the Answer to Whiter Teeth?,* quoted Dr. Kenneth Magid, D.D.S., adjunct clinical associate professor at NYU College of Dentistry: "Not only do charcoal toothpastes not meet the criteria that I would use to recommend them, but they may be too abrasive and damaging to teeth." "Since charcoal toothpastes aren't regulated by any agency or approved by the ADA, many of the products may be too abrasive for regular use and can possibly remove the enamel outside of the teeth or damage porcelain restorations such as veneers or crowns." "Once the enamel wears away, there's no way to regrow it, and on top of that, it can actually make your teeth look duller and darker instead of brighter. This is due to the underlying dentin showing through. . . . In addition to darkening your smile, wearing down your enamel will also make your teeth more sensitive to temperature and prone to cavities."[94]

- BBC, May 2019, *Charcoal Toothpastes 'don't whiten teeth,'* cited the British Dental Journal for the premise that "charcoal-based toothpastes, which claim to whiten teeth, are a 'marketing gimmick' which could increase the risk of tooth decay," and are "more abrasive than regular toothpastes, potentially posing a risk to the enamel and gums." The article quoted Dr. Greenwall-Cohen as stating that charcoal particles in toothpastes can "get caught up in the gums and irritate them," and also be problematic for fillings.[95]

- Harper's Bazaar, August 2018, *Is Charcoal Toothpaste Safe to Use*? (re-published in July 2019), reported on the doubts and issues raised by the British Dental Journal, noting, "[u]nlike your liver and kidneys, the teeth and gums don't perform a detoxifying function of the body, and since so-called toxins aren't generally hanging out in your mouth anyway, there's not much point in using your tooth cleaning to purge them."[96]

- DailyMail, May 2019, *Charcoal-based Toothpastes do NOT whiten teeth and may lead to tooth decay as dentists warn the products are reliant on 'marketing gimmicks and folklor*e, quotes Professor Damien Walmsley, scientific adviser for the British Dental Association: "Charcoal-based toothpastes offer no silver bullets for anyone seeking a perfect smile, and come with real risks attached." "These abrasive formulations may be effective at removing surface stains, but prolonged use may also wear away tooth enamel. Research now shows it could even cause discoloration of the gums."[97]

---

[93] Irene Cruz, "How Safe Is Activated Charcoal?," ABC 10 (June 9, 2017) [https://www.abc10.com/article/news/local/how-safe-is-activated-charcoal/447456019].

[94] Macaela Mackenzie, "Is Charcoal Toothpaste the Answer to Whiter Teeth?," Prevention (Sept. 26, 2018) [https://www.prevention.com/beauty/a23470865/charcoal-toothpaste/].

[95] "Charcoal Toothpastes 'don't whiten teeth,'" BBC: Health, May 10, 2019 [https://www.bbc.com/news/health-48216116].

[96] Lauren Hubbard & Alexandra Tunell, "Is Charcoal Toothpaste Safe to Use?," Harper's Bazaar, Aug. 14, 2018 (updated: Harper's Bazaar Staff, "Is Charcoal Toothpaste Safe to Use?," July 31, 2019) [https://www.harpersbazaar.com/beauty/health/advice/a3764/charcoal-toothpaste-pros-cons/].

[97] Victoria Allen, "Charcoal-based Toothpastes do NOT whiten teeth and may lead to tooth decay as dentists warn the products are reliant on 'marketing gimmicks and folklore," DailyMail (May 9, 2019), [https://www.dailymail.co.uk/health/article-7010219/Charcoal-based-toothpastes-NOT-whiten-teeth.html].

- Dr. Ada Cooper, DDS, spokesperson for the American Dental Association, warned of charcoal toothpastes in *Beware Whitening Promise of Charcoal Toothpastes* in March 2019: "Just because something is popular doesn't mean it's safe." "Charcoal is recognized as an abrasive material to teeth and gums." "Using materials that are too abrasive can actually make your teeth look more yellow, because it can wear away the tooth's enamel and expose the softer, yellower layer called dentin."[98]

131.   It is entirely implausible that Defendant, a health and beauty company that possessed particularly sophisticated marketing savvy and invested significant time, money and effort into the marketing of its products, failed to notice reported concerns from the ADA and other dental professionals and experts, researchers within the scientific community, and the media that the safety and efficacy of charcoal dentifrices were wholly unsubstantiated, and their use was highly risky to consumers' oral health, dental hygiene and aesthetics. (Unlike consumers, whose attention to the claims of the oral care industry will likely be limited to time in a shopping aisle looking at product packaging, or at online retail sites that present a company's marketing claims.)

132.   Despite its various duties, and despite its knowledge (actual or imputed) of the above-described scientific journals, media reports and admonishments from the ADA and other dental experts, Active Wow negligently proceeded with its misleading marketing campaign.

## G.    Active Wow Intended Consumers' Reliance and Induced Consumers' Purchase of the Charcoal Tooth Products

133.   Active Wow's advertising and marketing scheme was constructed in order to induce consumers to purchase the Charcoal Tooth Products over other products, and to do so at a price premium. The Charcoal Tooth Products are branded as "natural" and of the "highest quality ingredients," "enjoy a healthier, whiter smile the smartest and natural way," "not through harsh dental-grade whitening peroxides."

---

[98] The Family Dental Center, Mar. 2019, "Beware Whitening Promise of Charcoal Toothpastes," [https://thefamilydentalcenter.com/blog/beware-whitening-promise-of-charcoal-toothpastes/].

134.    The claims at issue in this Class Action Complaint – which are alleged herein as misleading, inaccurate, and/or false as well as lacking a proper factual basis and required evidentiary substantiation – are material to a consumer's decision whether to purchase them. Active Wow negligently, recklessly and/or intentionally fails to disclose material information that, if known to a consumer, would inform their perception of the claims affirmatively made, and would affect the purchase decision. The misrepresentations and omissions also have potentially serious consequences on consumers' oral health and dental hygiene, simply as a result of the intended use.

135.    Active Wow negligently continues to promote and hype the (unsubstantiated) attributes of activated charcoal despite warnings from dentists and the scientific community about charcoal dentifrices – at best a "marketing gimmick" and, at worst, harmful to teeth, dentistry implants and overall oral health. Active Wow's misleading claims, material omissions, and its false and deceptive marketing campaign as a whole, are likely to deceive (and have deceived) consumers.

136.    Active Wow's misleading claims, material omissions, and its false and deceptive marketing campaign as a whole, are materially misleading and likely to deceive (and have deceived) consumers, and are intended to induce reliance and the purchase of one or more of the Charcoal Tooth Products.

**H.    Consumers' Reliance was Reasonable and Justified**

137.    Each and every purchaser of the Active Wow Charcoal Tooth Products, including the named Plaintiffs and putative Class members, were exposed to Defendant's claims. In addition to online and print marketing and ads, the claims are printed on external cardboard packaging and product labeling.

138.   Active Wow's product labeling, marketing, and stylistic branding messaging together foster a reasonable expectation that Active Wow is a trustworthy brand, that its claims were legitimate, and that the products were safe and effective. Consumers reasonably relied on the oft-repeated claims that the Active Wow Charcoal Tooth Products had natural and safe whitening and detoxifying properties, as well as other dental hygiene benefits, were safe for everyday use, as well as generally appropriate, effective and not harmful in their intended use.

139.   Consumers reasonably relied on the oft-repeated claims that the Charcoal Tooth Products had natural and safe whitening and detoxifying properties, as well as other dental hygiene and cosmetic benefits, that they were safe for everyday use, as well as generally effective, appropriate, and adequate for dental hygiene maintenance and, at least not harmful in their intended use.

140.   An average consumer lacked any reasonable or meaningful ability to test or practicably verify Active Wow's claims. Consumers cannot reasonably be expected to research and independently ascertain the truthfulness of the claims made by the sellers they pay for products.

141.   This is particularly so in the purchase of a dental product from an oral care company, and consumers may reasonably rely upon the expertise of an oral care company that introduces a dental product to the retail market and presents it as safe for long-term daily use, effective and adequate to meet dental hygiene and oral care maintenance needs. Reasonable typical consumers lack sufficient training to discern the validity of such claims, which require a certain level of expertise and specialized knowledge; nor should consumers be reasonably expected to feel the need to question or investigate these types of claims.

142.     In this instance, Active Wow went out of its way with bombastic marketing and invited consumers to visit its website, to read its long explanations of the attributes of activated charcoal, to explore its hashtags, and to generally engage with – and place trust and confidence in – the brand and its products. Consumers' justifiable reliance is inextricably wound up in Active Wow's marketing, which was substantial in content and volume, and persistently underscoring its 'friendly' and engaging branding in order to influence consumer perceptions and cultivate trust and confidence.

143.     Consumers relied on Active Wow's claims and were induced to believe that the Active Wow Charcoal Toothpastes provide properties, qualities and safety benefits that other 'retail' toothpastes do not, and also that other 'natural' toothpastes do not. Unfortunately they paid a price, in economic injury as well as potential non-economic consequences.

**I.     Active Wow's Wrongful Conduct Injured Consumers**

144.     The named Plaintiffs, putative Class members, and consumers at large have been harmed by Active Wow's false, misleading and negligent representations because they purchased the Active Wow Charcoal Tooth Products that were not as represented, in that they did not provide the promised benefits, properties, and characteristics, as well as a level of safety. They were also ineffective as dentifrice and/or harmful.

145.     Plaintiff and purported class members paid a premium price for the mislabeled and falsely advertised products, and such premium can be directly and clearly tied to the inclusion of the activated charcoal ingredient, and the hyped marketing claims Active Wow made about its attributes. The premium would not have been paid but-for Active Wow's misrepresentations on the unproven and potentially harmful ingredient - charcoal. [99]

---

[99]     Each consumer has been exposed to the same or substantially similar misleading and unlawful practices and each product contains identical or substantially similar claims, and each of the Charcoal Tooth Products were sold at

146.     Active Wow's misrepresentations and omissions concerned material characteristics of its products, and it charged a higher price for such characteristics. Consumers (including the named Plaintiffs) would not have paid premium prices or even purchased them at all, but-for the representations on the attributes of activated charcoal and the benefits of its products could naturally and safely deliver. Active Wow's claims and omissions were materially misleading, in that they are likely to deceive a reasonable consumer and also directly concern unique and intrinsic qualities of the products, and caused an increase in consumers' perception of their value.

147.     Moreover, had Active Wow been revealed that charcoal in dentifrice is highly abrasive, carries significant risks, and/or even that Active Wow lacked the substantiation it was legally required to possess for its claims, then reasonable consumers, who had been drawn in by Active Wow's friendly marketing tactics, would have had cause to refrain from purchasing as well as using the Charcoal Toothpastes. In light of Active Wow's marketing content, even were the charcoal ingredient as implemented in Active Wow's particular formula for its Charcoal Toothpastes not ultimately proven to be categorically unsafe, the lack of substantiation and potential for risk would have deterred a reasonable consumer purchasing (at a premium) what they reasonably believed to be very safe healthy, natural, free of any potentially harmful ingredients.

148.     These products were not as represented and cannot deliver the promised health, dental hygiene, and cosmetic benefits, as previously discussed. For example, Active Wow had no reasonable factual basis for claiming any oral health benefits delivered in the form of purported detoxifying, purifying and adsorption properties of charcoal. The promised performance and benefits simply were not, and could not have been, realized.

---

a price premium. As such, each consumer suffered the same or substantially similar injuries as the named Plaintiffs, irrespective of which particular Charcoal Tooth Product they purchased.

149.    In addition to the economic injury in the form of a price premium paid for falsely promised benefits, consumers have been damaged by the total purchase price, because they purchased a dentifrice that does not provide the basic safety and oral health maintenance that otherwise similar non-charcoal dentifrices do. As such, the consumer is harmed in a second way that is distinct from, and in addition to, the price premium paid for nonexistent benefits of activated charcoal. Not only do the Charcoal Tooth Products fail to bring any premium or additional benefit with the charcoal ingredient or the premium price charged, the products also may not provide basic oral hygiene maintenance that would have been provided by other non-charcoal, regular toothpastes containing ingredients that have been substantiated, proven, and/or approved as legitimately safe and effective. Instead, Plaintiffs and putative Class Members were using oral care products that were deficient and do not meet basic oral health care needs and maintenance.

150.    Furthermore, the use of the products carried significant risk due to the inclusion of charcoal.[100] Consumers were damaged by the entire cost of the Charcoal Tooth Products that were ineffective and that don't whiten teeth, that don't fulfill the basic maintenance of dental hygiene and that are potentially deleterious to oral health.

151.    In addition to its trusting consumers, Active Wow took unfair advantage of its competitors. It conveyed that the Charcoal Tooth Products were of such premium, superior quality and had attributes that other commercially available toothpowders do not (whether 'natural' or more typical toothpowders).

---

[100]    For example, they used the Charcoal Tooth Products (which had been represented as, inter alia, safe for gums, natural, healthy and effective for whitening, and non-abrasive to enamel) which were, unbeknownst to them, were in fact abrading their enamel rather than safely and naturally whitening their teeth. And, as previously discussed, the inclusion of charcoal particles can directly damage dental implants or the gumline. Charcoal also causes damage that arrives in the form of oral health issues that can arise due to failure to meet basic oral health care needs and maintenance, as well as oral health issues that can spiral as consequences of the abrasive damage caused by charcoal.

152.    Active Wow has collected substantial profits as a result of numerous material omissions and false and misleading claims over the benefits and safety of activated charcoal in dentifrice and the Charcoal Tooth Products, and other purported attributes that were false and misleading.

153.    Defendant had knowledge that its claims lack required substantiation and that the Charcoal Tooth Products do not comport with the representations it has made. It also knew or should have known of the potential for serious harm caused by the use of charcoal in dentifrice. Defendant's conduct is deceptive, unethical, in violation of public policy, wanton and recklessly indifferent to others, and substantially injurious to consumers as well as to competitors.

154.    Defendant should not be permitted to retain its substantial benefit obtained from its injurious misconduct, which in justice and equity belong to Plaintiffs and Members of the Classes, and caused them injury; nor should it, in justice and equity, be permitted to continue to benefit from its unfair and deceptive practices.

155.    Without remedy (including injunctive relief), Plaintiffs, Members of the putative Classes, and other consumers, will suffer a concrete harm, in that they cannot be confident that the labeling of products will be truthful and not misleading when they are making their purchase decisions in the future. Alternatively, they might mistakenly but reasonably believe that the labeling and advertising of the products has been substantiated and/or corrected, and be deceived yet again into purchasing one or more of the products.

## V.    CLASS ACTION ALLEGATIONS

156.    Pursuant to CAFA and the Federal Rules of Civil Procedure 23(a) and (b)(3), Plaintiffs bring this lawsuit as a Class Action on behalf of themselves and all other similarly situated members of the Nationwide Class, NY Subclass, MI Subclass, and CA Subclass as defined

below.[101] This Class Action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of those provisions. (Plaintiffs have standing on to assert claims on behalf of purchasers of all of the Charcoal Tooth Products.)

The proposed "**Nationwide Class**" is defined, subject to timely amendment following discovery, as follows:

> All individuals who purchased one or more of the Active Wow Charcoal Tooth Products within the United States from four years prior to the filing of the Class Action Complaint to the time of class certification.

The proposed "**NY Subclass**" is defined, subject to timely amendment following discovery, as follows:

> All individuals who purchased one or more of the Active Wow Charcoal Tooth Products in New York from four years prior to the filing of the Class Action Complaint to the time of class certification.

The proposed "**MI Subclass**" is defined, subject to timely amendment following discovery as follows:

> All individuals who purchased one or more of the Active Wow Charcoal Tooth Products in Michigan from four years prior to the filing of the Class Action Complaint to the time of class certification.

The proposed "**CA Subclass**" is defined, subject to timely amendment following discovery, as follows:

> All individuals who purchased one or more of the Active Wow Charcoal Tooth Products in California from four years prior to the filing of the Class Action Complaint to the time of class certification.

157.    Members of the proposed Nationwide Class, NY Subclass, MI Subclass, and CA Subclass (and any other alternative subclasses that may be proposed) are collectively referred to herein as the "Class Members."

---

[101] As appropriate, Plaintiffs and the undersigned counsel reserve the right to assert claims on behalf of alternative sub-classes, as yet unknown (by state or multi-states, and/or sub-classes defined by other defining criteria).

158.    Excluded from the Classes are: (1) Defendant and their subsidiaries, affiliates, employees, officers, directors, assigns, and successors, as well as any entities or divisions in which any of the Defendants have a controlling interest; (2) the Judge to whom this case is assigned to and any member of the Judge's immediate family; and (3) anyone asserting claims for personal injury in connection with the Active Wow Charcoal Tooth Products. Plaintiffs reserve the right to amend the definition of the Classes if discovery and/or further investigation reveal that the Classes should be expanded or otherwise modified.

159.    **Numerosity**: The exact number of Class Members is presently unknown, and can only be ascertained through appropriate discovery; however, Plaintiffs reasonably estimate that the Nationwide Class consists of tens of thousands of members, the NY Subclass consists of thousands of members, the MI Subclass consists of thousands of members, and the CA Subclass consists of thousands of members. The expected numerosity of the Classes is such that joinder of all members is impracticable. Moreover, the disposition of the claims of the Class Members in a single action will provide substantial benefits to all parties and to the Court, including in terms of practicability and manageability. The Class Members are readily identifiable from information and records in Defendant's possession, custody, or control.

160.    **Commonality and Predominance**: Common questions of law and fact exist as to Plaintiffs and the Class Members, and predominate over questions affecting only individual members. Defendant engaged in a common course of conduct giving rise to the legal claims as to Plaintiffs themselves as well as to the other putative members of the Classes, all of whom were damaged by the identical common law violations, business practices, and misconduct. For example, consumers were exposed to the same or substantially similar set of misrepresentations and omissions and packaging, labeling, and marketing; manifested a similar kind and degree of

reliance; and also suffered substantially similar injuries. Individual questions, if any, pale by comparison, in both quality and quantity, to the numerous common questions that predominate in this action.

161.    These common questions predominate over any questions affecting only individual members of the Classes and include, but are not limited to, the following:

a.    Whether, in its product packaging, labeling, marketing, advertising, and/or sale of the Charcoal Tooth Products, Defendant made materially misleading representations and material omissions;

b.    Whether Defendant made and breached express and implied warranties to the named Plaintiffs and the Classes;

c.    Whether Defendant breached the implied warranty of merchantability;

d.    Whether Active Wow's false and misleading statements concerning the Charcoal Tooth Products and their concealment of material facts concerning the Charcoal Tooth Products were likely to deceive reasonable consumers;

e.    Whether misrepresentations on the Charcoal Tooth Products caused consumers to pay a higher price than they otherwise would;

f.    Whether the Charcoal Tooth Products were misbranded;

g.    Whether the Charcoal Tooth Products were falsely advertised;

h.    Whether reasonable consumers in the general public would be likely to be deceived by Defendant's advertising and marketing claims regarding the Active Wow Charcoal Tooth Products;

i.    Whether Plaintiffs and the Classes are entitled to injunctive relief;

j.    Whether Defendant violated New York's Uniform Commercial Code §§2-313 *et seq.*;

k.    Whether Defendant violated New York General Business Laws §§349 *et seq.*;

l.    Whether Defendant violated Sections 1770 *et seq.* of the California Civil Code;

m.      Whether Defendant violated Sections 17500 *et seq.* of the California Business and Professions Code;

n.      Whether Defendant violated Sections 1750 *et seq.* of the California Civil Code;

o.      Whether Defendant violated Sections 445.901 *et seq.* of the Michigan Compiled Laws;

p.      Whether Defendant should be enjoined from the continued unlawful marketing, advertising, promotion, distribution, labeling, and sale of the Active Wow Charcoal Tooth Products;

q.      Whether Defendant's earnings should be disgorged;

r.      Whether Plaintiffs and the Class have sustained an ascertainable loss as a result of Defendant's actions, and the nature and calculation of that loss;

s.      Whether the acts and omissions of Defendant warrant punitive damages.

162.    **Typicality**: Plaintiffs' claims are typical of the claims of the proposed Classes, as Plaintiffs and all Class Members purchased Active Wow Charcoal Tooth Products after exposure to, and reliance upon, the same material misrepresentations and/or omissions reflected in the claims appearing on the product packaging, and labeling, on Defendant's websites, Defendant's Amazon.com listing, other online retail platforms, and/or other forms of advertising and marketing. Plaintiffs and Class Members have suffered the same or substantially similar injuries as a result, in that they were damaged by the common thread of Defendant's misconduct and incurred expenses based on their reliance thereon. Plaintiffs are advancing the same claims and legal theories on behalf of themselves and all absent members of the Classes. As alleged above, each consumer and potential Class Member has been exposed to and relied upon the same or substantially similar deceptive practices regardless of which Charcoal Tooth Product they purchased because: 1) identical or substantially similar claims are made as to each product regarding the benefits of activated charcoal, and each product was labeled and/or promoted in

marketing and advertising with the same or substantially similar claims and omissions; and, 2) each product was labeled and/or promoted in marketing and advertising with the same or substantially similar claims and omissions regarding the benefits and safety of activated charcoal; and 3) the inclusion of activated charcoal in each product gives rise to the harms described herein. They are essentially one and the same product, with trivial variation in ingredients and in the representations made.

163.   **Adequacy**: Plaintiffs will fairly and adequately represent and protect the interests of the Classes. Plaintiffs have retained counsel highly experienced in prosecuting consumer class actions. Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of members of the Classes, and have the resources to do so. Neither Plaintiffs nor their counsel have any interests adverse to those of the Classes.

164.   **Superiority**: A class action is superior to all other available methods for the fair and efficient adjudication of this controversy. Because of the relatively small size of the claims of the individual members of the respective Classes, absent a class action, most members would likely find the cost of litigating their claims against Defendant to be prohibitive or impractical. A class action, on the other hand, offers the possibility for effective redressability. The class treatment of common questions of law and fact is also superior to multiple individual actions or piecemeal litigation in that it conserves the time and resources of the courts and the litigants, and promotes consistency and efficiency of adjudication. The class action device presents no management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

165.   **Ascertainability and Notice**: The proposed Classes are each defined with reference to objective criteria. A reliable and administratively feasible mechanism exists for the

determination of membership of each of the proposed Classes. Plaintiffs and their counsel anticipate that notice to the proposed Class Members will be effectuated through recognized, Court-approved notice dissemination methods, which may include the United States mail, electronic mail, internet postings, and/or other published notice.

## VI.   CAUSES OF ACTION

### COUNT ONE
### *NY Class*
### Deceptive Acts and Practices
### Violation of New York General Business Law § 349

166.    Plaintiff Kumar re-asserts and references the allegations in this Complaint, and incorporates as if fully set forth herein.

167.    Plaintiff Kumar brings this Count individually and on behalf of the NY Subclass.

168.    Section 349 of the New York General Business Law declares unlawful "[d]eceptive acts or practices in the conduct of any business, trade, or commerce or in the furnishing of any service in this state. . ." and further provides that "any person who has been injured of any violation of the [GBL § 349] may bring an action in his own name to enjoying such unlawful act or practice. . ."

169.    By the acts and conduct alleged herein, Defendant committed unfair or deceptive acts and practices, and did so on a recurring basis and in violation of the GBL. These acts and conduct include, but are not limited to, Defendant's deceptive and inaccurate misrepresentations that the Charcoal Tooth Products: (i) naturally whiten teeth and do so in a safe, healthy and/or gentle manner; (ii) are recognized as safe and effective for long-term daily use;  (iii) are safe for enamel and gums; (iv) are third-party tested for enamel safety; (v) detoxify and purify; (vi) adsorb, draw, or lift stains off of teeth by operation of the adsorptive properties of charcoal; (vii) are excellent for gum health; (viii) fight cavities and tooth decay, by merit of the inclusion of xylitol;

(ix) have re-mineralizing properties by merit of the inclusion of bentonite; (x) have anti-inflammatory and antiseptic properties, by merit of the inclusion of orange seed oil; and (xi) are generally beneficial to oral health and provide adequate dental hygiene for use as a replacement for toothpaste. All of these deceptive and inaccurate misrepresentations were made by Active Wow to Plaintiff Kumar and the NY Subclass at various times and represent examples of fraudulent statements because they deceived Plaintiff Kumar and members of the NY Subclass.

170.    Defendant's unlawful conduct also included omitting material facts, and Defendant's omissions were contrary to the representations it actually made. Additionally, Defendant was under a duty to disclose certain such omissions. Defendant's unlawful and material omissions include that: (i) its safety and efficacy claims lacked a reasonable basis and/or credible and competent scientific substantiation; (ii) the safety for long-term use had not been evaluated; (iii) available scientific literature counter-indicated the safety and effectiveness of charcoal for use in dentifrice; and (iv) the products may in fact be detrimental to cosmetic aesthetics, deficient for dental hygiene, and/or and harmful to tooth enamel and gums and to overall oral health. All of these unlawful and material omissions were made by Active Wow to Plaintiff Kumar and the members of the NY Subclass at various times and represent examples of fraudulent, unlawful and material omissions because they deceived Plaintiff Kumar and members of the NY Subclass.

171.    The foregoing deceptive acts and practices were likely to deceive or mislead reasonable consumers, and were consumer-oriented so as to induce consumers to purchase the Charcoal Tooth Products.

172.    Defendant's deceptive acts and practices are misleading in a material way because they fundamentally misrepresent the characteristics and benefits of the Active Wow Charcoal Tooth Products. They are likely to mislead, and did mislead, consumers who are reasonable

members of the general public acting reasonably under the circumstances, and induced them to purchase the Active Wow Charcoal Tooth Products. A reasonable consumer, including Plaintiff Kumar, would and did expect that the purchased Charcoal Tooth Products would provide the benefits, meet the quality and safety standards, and otherwise conform to the representations on the product labeling and packaging and on Defendant's website and online advertising and sales listings. Defendant charged a price premium for promised cosmetic, dental hygiene and oral health benefits that had not been substantiated and were not ultimately delivered.

173.    As a result of Defendant's false, misleading, and deceptive statements and representations, including but not limited to the misrepresentations described herein, Plaintiff Kumar and members of the NY Subclass have suffered, and continue to suffer, economic injury. They were injured because, had they known the true facts (that the Charcoal Tooth Products did not have the represented benefits, safety and characteristics), they would not have purchased the Charcoal Tooth Products and/or would not have paid the price premium Active Wow charged for the Charcoal Tooth Products, as compared to similar products that did not bear these misrepresentations. Plaintiff Kumar and the NY Subclass were damaged by the difference in value between the Charcoal Tooth Products as advertised and the Charcoal Tooth Products as actually sold.

174.    Defendant made its untrue and/or misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

175.    Pursuant to New York General Business Law § 349, Plaintiff Kumar seeks an order of this Court enjoining Active Wow from continuing to engage in unlawful, unfair or fraudulent business practices, or any other conduct prohibited by law. Plaintiff Kumar and the Class members may be irreparably harmed and/or denied an effective and complete remedy if such an order is not

granted. The unfair and deceptive acts and practices of Active Wow, as described above, present a serious threat to Plaintiff Kumar and the NY Subclass members. Plaintiff Kumar thus prays for relief as set forth below.

**COUNT TWO**
*NY Class*
**False Advertising**
**Violation of New York General Business Law § 350**

176.   Plaintiff Kumar re-asserts and references the allegations in this Complaint, and incorporates as if fully set forth herein.

177.   Plaintiff Kumar brings this Count individually and on behalf of the NY Subclass.

178.   By the acts and conduct alleged herein, Defendant committed unfair or deceptive acts and practices that constitute violations of Section 350 of the New York General Business Law, which makes false advertising unlawful.

179.   Section 350-a(1) of the New York General Business Law provides that the term 'false advertising' means advertising, including labeling, of a commodity, that is misleading in a material respect. "In determining whether any advertising is misleading, there shall be taken into account (among other things) not only representations made by statement, word, design, device, sound or any combination thereof, but also the extent to which the advertising fails to reveal facts material in light of such representations with respect to the commodity. . . ."

180.   Defendant has engaged in consumer-oriented conduct that is deceptive or misleading in a material way, and that constitutes false advertising in violation of Section 350 of the New York General Business Law. Defendant's conduct has constituted multiple separate violations of Section 350 of the New York General Business Law.

181.   In its marketing and advertising, and on the packaging and labeling of the Charcoal Tooth Products, Active Wow made representations that were untrue and materially misleading

concerning the Charcoal Tooth Products and also omitted other material information. Active Wow thereby misrepresents the true benefits, effectiveness, safety and other properties of the Charcoal Tooth Products.

182.    Active Wow's material misrepresentations were substantially uniform in content, presentation, and impact upon consumers at large. Plaintiff Kumar and the NY Subclass members and other consumers were and continue to be exposed to Defendant's material misrepresentations when purchasing the Charcoal Tooth Products.

183.    Active Wow's misleading marketing, advertising, packaging and labeling of the Charcoal Tooth Products was likely to deceive a reasonable consumer.

184.    Active Wow's material and misleading statements include but are not limited to its marketing, advertising, packaging and labeling of the Active Wow Charcoal Tooth Products, and misrepresentations of the true benefits, effectiveness, safety and other properties of the Active Wow Charcoal Tooth Products include but are not limited to its claims that the Active Wow Charcoal Tooth Products: (i) naturally whiten teeth and does so in a safe, healthy and/or gentle manner; (ii) are recognized as safe and effective for long-term daily use;  (iii) are safe for enamel and gums; (iv) are third-party tested for enamel safety; (v) detoxify and purify; (vi) adsorb, draw, or lift stains off of teeth by operation of the adsorptive properties of charcoal; (vii) are excellent for gum health; (viii) fight cavities and tooth decay, by merit of the inclusion of xylitol; (ix) have re-mineralizing properties by merit of the inclusion of bentonite; (x) have anti-inflammatory and antiseptic properties, by merit of the inclusion of orange seed oil; and (xi) are generally beneficial to oral health and provide adequate dental hygiene for use as a replacement for toothpaste. All of these material and misleading statements were made by Active Wow to Plaintiff Kumar and

members of the NY Subclass at various times and represent examples of fraudulent statements because they deceived Plaintiff Kumar and members of the NY Subclass.

185. Plaintiff Kumar and members of the NY Subclass were indeed deceived regarding the characteristics of Active Wow's Charcoal Tooth Products. Plaintiff Kumar and members of the NY Subclass who purchased the falsely-labeled Charcoal Tooth Products were reasonable under the circumstances and could not have known the Charcoal Tooth Products they purchased did not in fact bear the benefits, effectiveness, safety and other properties as advertised, marketed, packaged and labeled.

186. Defendant's untrue and misleading statements were material to Plaintiff Kumar and the NY Subclass members, and any reasonable consumer would expect the Charcoal Tooth Products to provide the benefits promised, and to conform to the represented safety and other standards, qualities and properties represented on the products' packaging and labeling and in advertising and marketing, on the Defendant's website, and in other online sales listings.

187. Any reasonable consumer would also find numerous previously discussed omissions to be highly material, including but not limited to the lack of substantiation, the high abrasivity, the potential detrimental consequences and risk to oral health and aesthetics, and other nondisclosed information that was material to consumers in the context of Active Wow's marketing claims.

188. The misrepresentations in Defendant's advertising and labeling caused Plaintiff Kumar and NY Subclass members to purchase one or more of the Charcoal Tooth Products, and to pay a price premium for such products.

189. As a result of Defendant's deceptive and false advertising, Plaintiff Kumar and members of the NY Subclass have suffered, and continue to suffer, an injury that they could not

have reasonably avoided. They were injured because, had they known the true facts (that the Charcoal Tooth Products did not have the promised benefits, effectiveness, safety and other properties), Plaintiff Kumar and members of the NY Subclass would not have purchased the Charcoal Tooth Products and/or would not have paid the price premium Active Wow charged for the Charcoal Tooth Products, as compared to similar products that were not falsely advertised and as compared to products sold by Active Wow itself that did not contain activated charcoal as an ingredient.

190.    As a direct and proximate result of Active Wow's statutory violations and false advertising, Plaintiff Kumar and the NY Subclass members have been damaged in the amount of the purchase price of the Charcoal Tooth Products they purchased and/or the price premium paid and are entitled to recover the difference in value between the Charcoal Tooth Products as advertised and the Charcoal Tooth Products as actually sold.

191.    In addition to the consumer injuries alleged herein, Defendant's deceptive and false advertising, marketing and labeling practices have caused harm to competition and the public interest.

192.    Defendant made its untrue and/or misleading statements and representations and omissions willfully, wantonly, and with reckless disregard for the truth.

193.    As a direct and proximate result of Active Wow's statutory violations and false advertising, Plaintiff Kumar and members of the NY Subclass were damaged and are entitled to monetary, compensatory, treble and punitive damages, injunctive relief, restitution and disgorgement of all monies obtained by Defendant's unlawful conduct, interest, and attorneys' fees and costs.

194.    On behalf of herself and other members of the NY Subclass, Plaintiff Kumar seeks to enjoin Active Wow from continuing to engage in false advertising and any other unlawful acts and practices, pursuant to New York General Business Law Section 350. Plaintiff Kumar and the members of the NY Subclass may be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted. The injuries and harms caused by Defendant's conduct are serious and ongoing.

195.    Pursuant to New York General Business Law Section 350-e, Plaintiff Kumar, on behalf of herself and the members of NY Subclass, seek to recover the actual damages or $500.00, whichever is greater, and seek to have these damages trebled. They also seek any other statutorily available damages and remedies, and to recover reasonable attorneys' fees and costs and further pray for relief as set forth below.

**COUNT THREE**
*NY Subclass*
**Intentional Misrepresentation/Fraud**

196.    Plaintiff Kumar re-asserts and references the allegations in this Complaint and incorporates as if fully set forth herein.

197.    Plaintiff Kumar brings this Count on behalf of herself and on behalf of the members of the NY Subclass.

198.    Defendant has represented to the public, including Plaintiff Kumar, by promoting, marketing, advertising, packaging, labeling, and other means, that the Charcoal Tooth Products have characteristics and qualities that they do not have. These representations were material, and were uniformly made. All of these material and misleading means of advertising were made by Active Wow to Plaintiff Kumar and members of the NY Subclass at various times and represent

examples of fraudulent statements because they deceived Plaintiff Kumar and members of the NY Subclass.

199.    At the time Defendant made the representations alleged herein, Defendant knew the representations were false and/or made them with fraudulent intent.

200.    Defendant made the misrepresentations herein with the intention of depriving Plaintiff Kumar and other NY Subclass members of property or otherwise causing injury, and thus, Defendant has committed fraud.

201.    Defendant's deceptive or fraudulent intent may be inferred by allegations and evidence of motive and opportunity, as well as strong circumstantial evidence of conscious misbehavior or recklessness. In the instant case, the allegations previously asserted herein that support scienter include, but are not limited to, the scientific journals that contradict, refute or call into question Active Wow's claims, of which it must have been aware (in light of the industry and media reports on the same, as well as consumer complaints). Defendant knew that consumers would place trust and confidence in its product claims and rely thereon in their purchase of the products. In addition to Active Wow's inferred awareness that its claims were unsubstantiated and the products were potentially unsafe, the Defendant expressly represented safety as well as superiority to other products, and also generated great profit by instilling confidence in its consumer base that its claims were credible; as such, Defendant's motive and opportunity to deceive, and access to accurate information is further strong circumstantial evidence.[102]

202.    Plaintiff Kumar and other NY Subclass members believed and relied on Defendant's promoting, marketing, advertising, packaging, and labeling of the Charcoal Tooth Products, and, in justifiable reliance thereon, purchased and used them.

---

[102]    *See, e.g., Hughes v. Ester C. Co.,* 930 F.Supp.2d 439 (E.D.N.Y. 2013); *Greene v. Gerber Products Co.,* 262 F.Supp.3d 38 (E.D.N.Y. 2017).

203.    As a proximate result of these acts and omissions, Plaintiff Kumar and the NY Subclass members were induced to spend money on the Charcoal Tooth Products and they were damaged in the economic loss of money spent (in an amount to be determined at trial) on the Charcoal Tooth Products that were not as represented, and that were not worth the full value paid, and which Plaintiff Kumar and the NY Subclass members would not have purchased, or would have paid less for, but-for the misrepresentations and material omissions.[103]

204.    As a proximate result of these acts and omissions, upon which Plaintiff Kumar and NY Subclass members reasonably relied, they also used the Charcoal Tooth Products to their damage, as they were unaware of the risks (including the abrasivity) and lack of substantiation for efficacy, safety as well as adequacy of daily long-term use for dental hygiene and oral health maintenance. The Charcoal Tooth Products contained charcoal, which is known to be abrasive and capable of causing damage to the enamel and gums, and to cause sensitivity and aesthetic issues.

205.    Plaintiff Kumar and the NY Subclass pray for relief as set forth below.

## COUNT FOUR
### *NY Subclass*
### Unjust Enrichment

206.    Plaintiff Kumar re-asserts and references the allegations in this Complaint, and incorporates as if fully set forth herein.

---

[103]    *See, e.g., Weisblum v. Prophase Labs, Inc.,* 88 F.Supp.3d 283, 298 (S.D.N.Y.2015) (concluding that the plaintiffs stated fraud claim based on allegations that the defendants made misrepresentations about cold remedy products, which induced the plaintiffs to buy the products); *Hughes v. Ester C Co.,* 930 F.Supp.2d 439, 472 (E.D.N.Y. 2013) (finding that the plaintiffs stated intentional misrepresentation claim based on allegations that the defendants made a material false representation–that vitamin products protected consumers from illness, that the defendants knew the representation was false, and that the plaintiffs reasonably relied on the representation in purchasing products at a premium, thereby causing damages); *Ackerman v. Coca-Cola, Co.,* 2010 WL 2925955, at *26, 2010 U.S. Dist. LEXIS 73156, at *98–99 (E.D.N.Y. July 21, 2010) (concluding that the plaintiffs stated intentional misrepresentation claim based on allegations that the defendant overstated vitamin water's health benefits and the plaintiffs purchased water at premium price based on the defendant's misrepresentations).

207.    Plaintiff Kumar brings this Count on behalf of herself and on behalf of the members of the NY Subclass.

208.    To prevail on a claim for unjust enrichment in New York, it must be established that (1) the defendant benefitted, (2) at the expense of the plaintiffs, and (3) that equity and good conscience require restitution.

209.    This claim is not merely duplicative of the other conventional causes of action asserted by Plaintiff Kumar and the NY Subclass herein.[104] Rather, it is asserted as an alternative and/or distinct set of elements and theory of recovery, those which establish circumstances so as to "create an equitable obligation running from" Defendant to Plaintiff Kumar and the putative NY Subclass members.[105] The basis of unjust enrichment is not limited only to the standard false-advertising claims, but also to the inherent unsafety and risk of the Charcoal Tooth Products.

210.    As a result of Active Wow's deceptive, fraudulent and misleading labeling, advertising, marketing and sales of the Charcoal Tooth Products, its material representations and omissions, and other wrongful conduct, Active Wow has been unjustly enriched by it sales of the

---

[104]    This claim is not duplicative of the other causes of action asserted by Plaintiff Kumar herein. For example, the element of damages takes on different considerations than for the other claims; rather than calculating damages premised on a theory of restitution to Plaintiff Kumar and the NY Subclass members (and assessing what portion of payment that was based on the misrepresentations and overpayment for value not received), the damage under the unjust enrichment theory is simply the Defendant's total revenue from the sales of the product. "This practical approach provides plaintiffs with a remedy and prevents defendant from paying more than they owe." *In re Alma Litigation*, 282 F.Supp.3d 751 (S.D.N.Y. 2017).  It may also be premised on a potentially distinct and additional or alternative set of facts concerning consumers' expectation and the product's failure to meet them, whether it be failure or inability to perform, as opposed to inherent danger of which the actual purchaser is never aware. *Id*. (". . . in the context of an unjust enrichment claim, a full refund may be available even where the product does ultimately confer a benefit to some purchasers. If a product is so dangerous that no informed, reasonable person would purchase it, then even if an actual purchaser from whom the danger was concealed went ahead and purchased it and received some incidental benefit thereby, the purchaser may still be entitled to a full refund on a product she never would have purchased but for defendant's concealment, since the defendant was unjustly enriched by the very act of plaintiff's purchase.")

[105]    *See, e.g., Hughes v. Ester C Co.*, 330 F.Supp.3d 862, 876-77 (E.D.N.Y. 2018), quoting *Corsello v. Verizon N.Y., Inc.*, 18 N.Y.3d 777, 790, 944 N.Y.S.2d 732, 967 N.E.2d 1177 (2012). *See also Cox v. Microsoft  Corp*., 778 NYS2d 147 (App.Div. 2004) (plaintiffs' allegations that deceptive practices caused them to pay artificially inflated prices for its products state a cause of action for unjust enrichment).

Charcoal Tooth Products. All of these material and misleading statements were made by Active Wow to Plaintiff Kumar and members of the NY Subclass at various times and represent examples of fraudulent statements because they deceived Plaintiff Kumar and members of the NY Subclass. Active Wow has financially benefitted through its use of false advertising and other deceptive and wrongful practices, and at the expense of Plaintiff Kumar and other members of the NY Subclass, through the purchase price payments for Charcoal Tooth Products. The Charcoal Tooth Products did not have the benefits, safety, effectiveness, properties, value, and other qualities that Active Wow represented them to have and brought unknown risks and detriment with their intended use, some of which was not discernable or discerned by Plaintiff Kumar or the average reasonable consumer.

211.    Because the Charcoal Tooth Products were not as Active Wow purported them to be, it is inequitable and unjust to permit Active Wow to retain its ill-gotten financial benefits from the sale of the Charcoal Tooth Products. Therefore, as required by equity and good conscience, Plaintiff Kumar and the NY Subclass members are entitled to and seek disgorgement and restitution of such financial benefits, as set forth below.

**COUNT FIVE**
*Nationwide Class*
**Breach of Express Warranty**
**Uniform Commercial Code § 2-313**

212.    Plaintiffs re-assert and reference the allegations in this Complaint, and incorporate as if fully set forth herein.

213.    Plaintiffs bring this claim under Article 2 of the Uniform Commercial Code (the "UCC") (as adopted and applied by the states), together on behalf of themselves and on behalf of the Members of the Nationwide Class.

214.    Under Section 2-313 of the UCC, affirmations of fact or promise made by the seller to the buyer, which relate to the goods and are a basis of the bargain, create an express warranty that the goods shall conform to the affirmation or promise. The New York equivalent of this section is codified at Section 2-313 of the New York Uniform Commercial Code, the California equivalent of this section is codified at Section 2313(1)(a) of the California Commercial Code, and the Michigan equivalent of this section is codified at Section 440.2313 of the Michigan Compiled Laws.

215.    Under Section 2-313 of the UCC, affirmations of fact or promise made by the seller to the buyer, which relate to the goods and are a basis of the bargain, create an express warranty that the goods shall conform to the affirmation or promise.

216.    In connection with the sale of the Active Wow Charcoal Tooth Products, Defendant issued written express warranties concerning the Active Wow Charcoal Tooth Products. These express warranties concerning the Charcoal Tooth Products included, but were not limited to:

- "Safe to use"

- "Gentle and Effective"

- "Active Wow's activated charcoal formula is safe to use for whitening your teeth, while being easy on your gums."

- "Active Wow naturally whitens your teeth, not through harsh dental-grade whitening peroxides, but through the power of Activated Charcoal, nature's best purifiers and detoxifiers."

- "The natural way to whitening your teeth"

- "Purifies and Detoxifies"

- "Activated charcoal works by pulling stains off your teeth through a process called 'adsorption'."

- "Activated charcoal works by drawing out stains from your teeth while detoxifying the mouth."

- "Enamel safe"

- "Whitens over time – removes stains from coffee, wine, cigarettes without bleach"

- "Activated Coconut Formula – derived from premium sources, easy on gums, gentle on enamel"

- "Detoxifies Your Mouth – You can use activated charcoal in place of your regular toothpaste or as a supplement to regular toothpaste"

- "The Best Natural Teeth Whitening Solution on the Market"

- "It's your new best friend for detoxifying the mouth, removing bad breath, and gently polishing away stains quickly and easily."

- "Our naturally brilliant formula eliminates stains caused by coffee, wine, and other foods you can't live without. With as little as one dab and a brush stroke, our powder leaves your teeth whiter without the sensitivity associated with standard kits and strips."

- "It is a natural treatment used to absorb toxins and chemicals to clean and purify your teeth."

- "It is produced from natural materials that undergo a specific treatment to make it more porous and adsorbent, while being safe for your body."

- "activated charcoal works by pulling stains off your teeth through a process 'adsorption'"

- "activated charcoal works by drawing stains out from your teeth while detoxifying the mouth"

All of these material and misleading statements were made by Active Wow to Plaintiffs and Class members at various times and represent examples of fraudulent statements because they deceived Plaintiffs and the Class members.

217.     Defendant's affirmations of fact or promise were made to Plaintiffs and Members of the Nationwide Class on the product labeling and packaging of the Active Wow Charcoal Tooth Products, on Active Wow's website, and other online sites and print advertising. These

affirmations of fact or promise, made on the physical products themselves as well as online and in print, were disseminated throughout the United States, and were seen by Plaintiffs and Members of the Class during the purchase process.

218.    These affirmations of fact or promise were material, and informative to the product and the purchase decision, and Active Wow made them in order to induce the purchase. Defendant knew that Plaintiffs and Class Members were ignorant of the veracity of these promises and assertions of fact.

219.    Plaintiffs and Class Members reasonably and justifiably relied upon the express warranties, believing that the products would conform to Defendant's affirmations of fact, representations, and promises.

220.    These affirmations of fact or promise were material and became part of the basis of the bargain between the Defendant on one hand, and Plaintiffs and Class Members on the other, thereby creating express warranties that the Active Wow Charcoal Tooth Products would conform to Defendant's affirmations of fact, representations, and promises.

221.    Plaintiffs and Class Members were in direct privity with Defendant and/or its agents, or were intended third-party beneficiaries of the warranties breached herein to the extent required by law.

222.    Defendant breached its express warranties because the Active Wow Charcoal Tooth Products do not, in fact, conform to the affirmations of fact or promise, and the Active Wow Charcoal Tooth Products do not perform as expressly warranted. Indeed, the Active Wow Charcoal Tooth Products have failed to provide a minimum level of quality for use as a dentifrice.

223.    In fact, no reliable, scientifically sound studies have demonstrated that any of the benefits of activated charcoal or the Charcoal Toothpastes as represented by Defendant to be

substantiated, and there is no substantiation of their safety or efficacy. Activated charcoal has never been proven effective and safe for use in dentifrice generally or for the particular claims made by Defendant.

224.   Plaintiffs and the Nationwide Class Members were injured as a direct and proximate result of Defendant's breach because the Plaintiffs and the Class Members did not receive goods as warranted by Defendant, and thus did not receive the benefit of the bargain, as the Active Wow Charcoal Tooth Products did not have the promised benefits, effectiveness, safety or value as represented.  The Plaintiffs and Members of the Nationwide Class suffered injuries because, had they known the true facts, they would not have purchased the Active Wow Charcoal Tooth Products, as compared to similar products that did conform as warranted and represented.

225.   Within a reasonable time after she knew of Defendant's warranty breaches, Plaintiff Kumar, on behalf of herself and the Class members, has placed Defendant on notice of its breach and has given it opportunity to cure, by filing this Class Action Complaint.[106]

226.   As a direct and proximate result of Defendant's breaches of express warranty, Plaintiffs and the Nationwide Class Members have been damaged by the difference in value between the Active Wow Charcoal Tooth Products as advertised and the Active Wow Charcoal Tooth Products as actually sold, in an amount to be proven at trial, together with interest thereon from the date of purchase.

---

[106]   The filing of this Complaint serves as timely notice of Plaintiffs' claims pursuant to the holding of *Tomasino v. Estee Lauder Companies Inc.*, 44 F. Supp. 3d 251 n. 6 (E.D.N.Y. 2014).

**COUNT SIX**
*Nationwide Class*
**Implied Warranty of Merchantability**
**Uniform Commercial Code § 2-314**

227.    Plaintiffs re-assert and reference the allegations in this Complaint, and incorporate as if fully set forth herein.

228.    Plaintiffs brings this claim under Article 2 of the UCC (as adopted and applied by the states), and do so together on behalf of themselves and on behalf of the members of the Nationwide Class.

229.    Under Section 2-314 of the UCC, a warranty that the goods shall be merchantable is implied in the contract for their sale, if the seller is a merchant with respect to goods of that kind. To be considered merchantable, the good must be safe and fit for the intended use, and conform to the promise or affirmations of fact made on the label or packaging. The California equivalent of this section is Section 2314 of the California Commercial Code, the Michigan equivalent of this section is Section 440.2314 of the Michigan Compiled Laws, and the New York equivalent of the section is Section 2-314 of the New York Uniform Commercial Code.

230.    In this case, Defendant qualifies as a merchant, and a warranty of merchantability was implied in the sale of Active Wow Charcoal Tooth Products to the Plaintiffs and Class Members. Defendant, directly through its website and/or by and through its storefront on Amazon and/or through contractual arrangements with online retailers and other third-parties, sold the Charcoal Tooth Products clearly labeled as having certain characteristics. Defendant knew the use for which the Active Wow Charcoal Tooth Products were intended, and impliedly warranted them to be of merchantable quality, safe and fit for use.

231.   Plaintiffs and Class Members were in direct privity with Defendant and/or its agents, or were intended third-party beneficiaries of the warranties breached herein to the extent required by law.

232.   With each sale of falsely labeled Active Wow Charcoal Tooth Products to the Plaintiffs and Class Members, Defendant has breached the implied warranty of merchantability. The Active Wow Charcoal Tooth Products have failed to provide a minimum level of quality for use as a dentifrice. All of these falsely labeled Active Wow Charcoal Tooth Products represent statements that were made by Active Wow to Plaintiffs and Class members at various times and represent examples of fraud because they deceived Plaintiffs and the Class members.

233.   Plaintiffs and Class Members reasonably relied on Defendant's affirmations, as well as the projected trustworthiness of the brand and the company. Had the Plaintiffs and Class Members known of the true nature of the Active Wow Charcoal Tooth Products and that they were not of merchantable quality, not safe or fit for their intended use, and not in conformance with Defendant's representations, they would not have purchased them, or they would not have been willing to pay the inflated price.

234.   Within a reasonable time after she knew of Defendant's warranty breaches, Plaintiff Kumar, on behalf of herself and the Class members, has placed Defendant on notice of its breach and has given it opportunity to cure, by filing this Class Action Complaint.[107]

235.   As a direct and proximate result of Defendant's breaches of implied warranty of merchantability, Plaintiffs and the Class Members have been damaged by the difference in value

---

[107]   The filing of this Complaint serves as timely notice of Plaintiffs' claims pursuant to *Tomasino v. Estee Lauder Companies Inc.*, 44 F. Supp. 3d 251 n. 6 (E.D.N.Y. 2014).

between the Active Wow Charcoal Tooth Products as advertised and the Active Wow Charcoal Tooth Products as actually sold, in an amount to be proven at trial.

## COUNT SEVEN
### *MI Subclass*
### Violation of the Michigan Consumer Protection Act ("MCPA")
### Mich. Comp. Laws §445.901 *et seq.*

236.     Plaintiff Kareus and Plaintiff Stempkowski re-assert and reference the allegations in this Complaint and incorporate them as if fully set forth herein.

237.     Plaintiff Kareus and Plaintiff Stempkowski each bring this Count individually and on behalf of the Members of the MI Subclass.

238.     Plaintiff Kareus and Plaintiff Stempkowski are persons within the meaning of the MCPA and they have each suffered economic injury as a result of Active Wow's unlawful and unfair misconduct, and otherwise meet requirements for statutory standing to sue under the MCPA. Mich. Comp. Laws §§445.902, 445.903, 445.911.

239.     Representations that goods have "characteristics, ingredients, uses, benefits, or quantities that they do not have," or representations that goods are of a "particular standard, quality, or grade…if they are of another" are specifically prohibited under the MCPA and are constituted as "unfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce[.]" Mich. Comp. Laws §445.903.

240.     By the acts and conduct alleged herein, Defendant committed unfair, unconscionable and/or deceptive acts and practices and employed deceptive, misleading, and/or untrue advertising, as well as other prohibited acts and practices. Defendant's deceptive acts and practices were likely to deceive or mislead reasonable consumers. Defendant's deceptive acts and practices are misleading in a material way because they fundamentally misrepresent the characteristics and benefits of the Active Wow Charcoal Tooth Products. They are likely to

mislead, and did mislead, consumers who are reasonable members of the general public acting reasonably under the circumstances and induced them to purchase the Active Wow Charcoal Tooth Products.

**Unlawful**

241.    Defendant violated, and continues to violate, the MCPA's prohibition against engaging in unlawful conduct. A business act is unlawful if it violates established state or federal law. According to the MCPA, it is unlawful to engage in "unfair, unconscionable, or deceptive" trade practices as Defendant has done here. Mich. Comp. Laws §445.903.

**Unfair & Unconscionable**

242.    Defendant violated, and continues to violate, the MCPA's prohibition against engaging in unfair and unconscionable conduct. The blatant misrepresentations of the "characteristics, uses, [and] benefits" of the Charcoal Tooth Products made by Defendant is the unfair and unconscionable conduct contemplated by the statute. Mich. Comp. Laws §445.903.

**Deceptive**

243.    Defendant's misrepresentations, omissions, failure to disclose safety concerns and the lack of controlled safety studies are considered deceptive practices under the MCPA because this conduct is likely to deceive a reasonable consumer, and the true facts would be material to a reasonable consumer.

244.    Had Plaintiff Kareus, Plaintiff Stempkowski, and the MI Subclass Members been aware of the Defendant's deceptive practices and marketing tactics, and the truth about the misbranded and falsely advertised Charcoal Tooth Products (including the safety concerns, the lack of controlled safety studies, the lack of required substantiation, the misleading and deceptive nature of claims on whitening, detoxifying and other purported properties of the products, and

other facts), they would not have purchased the product(s) or would have paid less for the product(s).

245.    Defendant's deceptive conduct is compounded by its continued representation that its Active Wow Charcoal Tooth Products are safe, as well as by its failure to take remedial action.

246.    All of the wrongful conduct alleged herein occurred, and continues to occur, in the conduct of Active Wow's business and is part of a general practice that is still being perpetuated and repeated throughout the state of Michigan and nationwide. The misbranded products and misleading and deceptive marketing claims continue to be disseminated.

247.    As a direct and proximate result of Defendant's unlawful misconduct, including but not limited to its specific statutory and regulatory violations, Plaintiff Kareus, Plaintiff Stempkowski, and the MI Subclass Members have been harmed. That harm will continue unless Defendant is enjoined from using the misleading marketing, packaging and labeling described herein in connection with the advertising and sale of its Charcoal Tooth Products.

248.    In accordance with Section 445.911 of the MCPA, Plaintiff Kareus and Plaintiff Stempkowski seek an order enjoining Defendant from continuing to conduct business through its unlawful, unfair, unconscionable, and deceptive practices, and to commence a corrective advertising campaign. Mich. Comp. Laws §445.911. Defendant's conduct is ongoing and continuing, such that prospective injunctive relief is necessary.

249.    Defendant has been unjustly enriched and its monies wrongfully earned should be disgorged, and Defendant should be required to pay, in restitution to Plaintiff Kareus, Plaintiff Stempkowski and MI Subclass Members, any money that Defendant acquired by unfair competition, as provided under the MCPA and/or as otherwise statutorily permitted. Mich. Comp. Laws §445.911.

250.    Plaintiff Kareus, Plaintiff Stempkowski, and the MI Subclass Members are also entitled to restitution on the basis of quasi-contract or equity, and should be restored with the monies they paid for the falsely advertised misbranded products.

**COUNT EIGHT**
*CA Subclass*
**Violation of the California Unfair Competition Law ("UCL")**
**Cal. Bus. & Prof. Code § 17200**

251.    Plaintiff Schnurer re-asserts and references the allegations in this Complaint, and incorporates them as if fully set forth herein.

252.    Plaintiff Schnurer brings this Count individually and on behalf of the members of the CA Subclass.

253.    Plaintiff Schnurer is a person within the meaning of the UCL and she has suffered economic injury as a result of Active Wow's unlawful and unfair misconduct, and otherwise meets requirements for statutory standing to sue under the UCL. Cal. Bus. & Prof. Code §§ 17201, 17204.

254.    The UCL prohibits any "unlawful, unfair, or fraudulent business act or practice" as well as any "unfair, deceptive, untrue or misleading" advertising, and any act prohibited by Sections 17500 through 17577.5. Cal. Bus. & Prof. Code § 17200.

255.    By the acts and conduct alleged herein, Defendant committed unfair, unlawful and/or fraudulent acts and practices and employed deceptive, misleading, and/or untrue advertising, as well as other prohibited acts and practices. Defendant's deceptive acts and practices were likely to deceive or mislead reasonable consumers. Defendant's deceptive acts and practices are misleading in a material way because they fundamentally misrepresent the characteristics and benefits of the Active Wow Charcoal Tooth Products. They are likely to mislead, and did mislead, consumers who are reasonable members of the general public acting reasonably under the circumstances, and induced them to purchase the Active Wow Charcoal Tooth Products.

256.    Defendant's misconduct included misleading and deceptive claims that the Active Wow Charcoal Tooth Products: (i) naturally whiten teeth and do so in a safe, healthy and/or gentle manner; (ii) are recognized as safe and effective for long-term daily use;  (iii) are safe for enamel and gums; (iv) are third-party tested for enamel safety; (v) detoxify and purify; (vi) adsorb, draw, or lift stains off of teeth by operation of the adsorptive properties of charcoal; (vii) are excellent for gum health; (viii) fight cavities and tooth decay, by merit of the inclusion of xylitol; (ix) have re-mineralizing properties by merit of the inclusion of bentonite; (x) have anti-inflammatory and antiseptic properties, by merit of the inclusion of orange seed oil; and (xi) are generally beneficial to oral health and provide adequate dental hygiene for use as a replacement for toothpaste.

257.    Defendant also omitted material facts. Defendant's omissions were contrary to the representations it actually made. Additionally, Defendant was under a duty to disclose certain such omissions. Defendant's omissions include that: (i) its safety and efficacy claims lacked a reasonable basis and/or credible and competent scientific substantiation; (ii) the safety for long-term use had not been evaluated; (iii) available scientific literature counter-indicated the safety and effectiveness of charcoal for use in dentifrice; and (iv) the products may in fact be detrimental to cosmetic aesthetics, deficient for dental hygiene, and/or and harmful to tooth enamel and gums and to overall oral health.

**Unlawful**

258.    Defendant violated, and continues to violate, the UCL's prohibition against engaging in unlawful conduct. A business act or practice is "unlawful" under the UCL if it violates established state or federal law. Defendant's conduct falls under the unlawful prong of the UCL, by virtue of the allegations previously asserted herein, and also by virtue of its violations of the following:

a.      The FTC Act and FTC regulations;

b.      The FD&C Act and FDA regulations;

c.      California's Sherman Law (Cal. Health & Safety Code §§ 109875 *et seq.*), as alleged herein, by its act of misbranding and its act of falsely advertising a cosmetic, as well as: the unlawful dissemination of falsely advertised cosmetics (110390), the unlawful manufacture, sale, delivery, holding and offer for sale of a falsely advertised cosmetic (110395), the unlawful advertising of a misbranded cosmetic (110398), the unlawful delivery, proffer for delivery and/or receipt in commerce of a falsely advertised cosmetic (110400);

d.      The CLRA, Cal. Civ. Code §§ 1750, *et seq.*, including §§ 1770(a)(2), (3), (5), (7), and (9), as pled below and as alleged herein; and

e.      The FAL, Cal. Bus. & Prof. Code §§ 17500, *et seq.*, as pled below and as alleged herein.

**Unfair**

259.    Defendant has also violated, and continues to violate, the UCL's prohibition against engaging in unfair conduct. Defendant has violated the unfair prong of section 17200 of the UCL because the acts and practices alleged herein – including the omission of its lack of substantiation for its claims, and other facts that would detract from its claims, as well as the existence of safety concerns over the use of charcoal in dentifrice – offend established public policy (included but not limited to the policies reflected by the statutory and regulatory provisions cited above), and are immoral, unethical, unscrupulous, as well as substantially injurious to consumers.

260.    Its conduct presents no utility or benefit to consumers or to competition. To the extent any purported benefit is associated with Defendant's acts and practices, any such benefit is greatly outweighed by the gravity of the harm caused to consumers by Defendant's conduct.

261.    Substantial consumer injury could not have reasonably been avoided. Typical and reasonable consumers are not in a position to know and understand the safety concerns posed by the use of charcoal in dentifrice generally or the use of the Charcoal Toothpowder sold by Active Wow, or the lack of controlled safety studies for such products.

262.    It also impairs competition within the market for similar dentifrices, and prevents Plaintiff Schnurer and the CA Subclass Members from making fully informed decisions about the oral care products to purchase or the price to pay for such products.

**Fraudulent**

263.    Defendant has violated the fraudulent prong of section 17200 of the UCL because its misrepresentation, its omissions, failure to disclose safety concerns and the lack of controlled safety studies were likely to deceive a reasonable consumer, and the true facts would be material to a reasonable consumer.

264.    Had Plaintiff Schnurer and the CA Subclass Members been aware of the Defendant's deceptive practices and marketing tactics, and the truth about the misbranded and falsely advertised Charcoal Tooth Products (including the safety concerns; the lack of controlled safety studies; the lack of required substantiation; the misleading and deceptive nature of claims on whitening, detoxifying and other purported properties of the products; and other facts), they would not have purchased the product(s) or would have paid less for the product(s).

265.    Defendant's deceptive and unconscionable conduct is compounded by its continued representation that its Active Wow Charcoal Tooth Products are safe, as well as its failure to take remedial action.

266.    All of the wrongful conduct alleged herein occurred, and continues to occur, in the conduct of Active Wow's business and is part of a general practice that is still being perpetuated

and repeated throughout the state of California and nationwide. The misbranded products and misleading and deceptive marketing claims continue to be disseminated.

267.    As a direct and proximate result of Defendant's unlawful misconduct, including but not limited to its specific statutory and regulatory violations, Plaintiff Schnurer and the CA Subclass Members have been harmed. That harm will continue unless Defendant is enjoined from using the misleading marketing, packaging and labeling described herein in connection with the advertising and sale of its Charcoal Tooth Products.

268.    In accordance with Section 17203 of the UCL, Plaintiff Schnurer seeks an order enjoining Defendant from continuing to conduct business through its unlawful, unfair, and deceptive practices, and to commence a corrective advertising campaign.  Cal. Bus. & Prof. Code § 17203. Defendant's conduct is ongoing and continuing, such that prospective injunctive relief is necessary.

269.    Defendant has been unjustly enriched and its monies wrongfully earned should be disgorged, and required to be paid in restitution to Plaintiff Schnurer and CA Subclass Members any money that Defendant acquired by unfair competition, as provided under the UCL and/or as otherwise statutorily permitted. Cal. Bus. & Prof. Code § 17204; Cal. Com. Code § 2721.

270.    Plaintiff Schnurer and the CA Subclass Members are also entitled to restitution on the basis of quasi-contract or equity, and should be restored with the monies they paid for the falsely advertised misbranded products.

### COUNT NINE
#### *CA Subclass*
#### Violations of the California Consumers Legal Remedies Act ("CLRA")
#### Cal. Civ. Code § 1750, *et seq.*

271.    Plaintiff Schnurer re-asserts and references the allegations in this Complaint, and incorporates as if fully set forth herein.

272.    Plaintiff Schnurer brings this Count individually and on behalf of the members of the CA Subclass.

273.    Defendant is a "person" as defined under Cal. Civ. Code § 1761(c).

274.    The Charcoal Tooth Products constitute "goods" as defined under Cal. Civ. Code § 1761(a).

275.    Plaintiff Schnurer and each of the putative CA Class Members are each a "consumer" as defined under Cal. Civ. Code § 1761(d).

276.    Each of their respective purchases of the Charcoal Tooth Products that were made, marketed, and/or sold by Defendant constitute "transactions" within the meaning of Cal. Civ. Code § 1761(e).

277.    The CLRA prohibits various deceptive practices in connection with the conduct of a business providing goods, property, or services primarily for personal, family, or household purposes.

278.    By its conduct, as alleged herein, Defendant engaged in unlawful deceptive business practices. Defendant violated, and continues to violate, the CLRA, including the following specific prohibitions of the CLRA:

f.    Section 1770(a)(2), which prohibits "[m]isrepresenting the source, sponsorship, approval, or certification of goods or services" (Cal. Civ. Code § 1770(a)(2));

g.    Section 1770(a)(3), which prohibits "[m]isrepresenting the affiliation, connection, or association with, or certification by, another" (Cal. Civ. Code § 1770(a)(3));

h.    Section 1770(a)(5), which prohibits "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have" (Cal. Civ. Code § 1770(a)(5));

i.      Section 1770(a)(7), which prohibits "[r]epresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another" (Cal. Civ. Code § 1770(a)(7));

j.      Section 1770(a)(9), which prohibits "[a]dvertising goods or services with intent not to sell them as advertised" (Cal Civ. Code § 1770(a)(9));

279.   As a direct and proximate result of Defendant's CLRA violations, Plaintiff Schnurer and the CA Subclass Members have been harmed. That harm will continue unless Defendant is enjoined from the current, ongoing and future employment of its deceptive business practices and unlawful misrepresentations concerning the Charcoal Tooth Products.

280.   Pursuant to Section 1780 of the California Civil Code, which provides the basis of remedies for violations of the CLRA under Section 1770, Plaintiff Schnurer seeks an order of this Court enjoining Defendant from continuing to engage in its unlawful and deceptive practices. She also seeks an order that the Defendant take corrective action as to its material omissions and misrepresentations. Plaintiff Schnurer and the CA Subclass Members will be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted.

281.   Plaintiff Schnurer would purchase a Charcoal Toothpowder again in the future, should the product be shown to have the attributes that were advertised and labeled. She also might purchase again if its advertising and labeling is corrected to accurately reflect the true properties, benefits, safety and other properties of the products.

282.   However, she continues to suffer ongoing concrete harm and imminent injury because she is unable to rely on the veracity of Defendant's product labeling and advertising, and will be unable to rely in the future because, as a previously misled consumer, she will lack confidence in the representations made. Alternatively, when considering a purchase decision in

the future, she will be injured if she believes the claims have been substantiated or corrected, and, as any reasonable consumer would, thinks she can rely on the labeling and marketing to be truthful and non-misleading and be confident in the representations concerning the products.

283.    In addition to injunctive relief, Plaintiff Schnurer seeks damages as provided for under the CLRA, on behalf of herself and the CA Subclass – including actual, statutory and punitive damages. Plaintiff Schnurer and CA Subclass Members have suffered, and continue to suffer, injuries caused by Defendant and as a result of their purchase of falsely advertised and misbranded products and of Defendant's unlawful conduct and statutory violations. Had the consumers known the truth about the Defendant's marketing tactics and practices, and about the true attributes, benefits, safety, the lack of substantiation, certification, value, and other properties of the products themselves, they would not have purchased the Charcoal Tooth Products, or they would have paid significantly less.

284.    In compliance with Section 1782 of the CLRA, Plaintiff Schnurer has given Defendant written notice of her allegations and the claimed CLRA violations, and has demanded that Defendant take appropriate actions to rectify and remedy its misconduct. On November 22, 2019, Plaintiffs sent notice and demand by certified mail, return receipt requested, to the address believed to be Defendant's principal place of business in California. The letter was returned to Plaintiffs' counsel on December 3, 2019, for insufficient address. The same day, Plaintiffs' counsel sent another CLRA demand letter to Defendant's registered agent in Florida. Defendant is headquartered in Florida.[108] There has been no response since the issuance of the second demand letter on December 3, 2019.

---

[108] *See, e.g.*, *Shein v. Canon USA, Inc.,* 2009 WL 3109721 (C.D. Cal. Sep. 22, 2009) (concluding that Plaintiffs' demand, which was sent to defendant's headquarters in New York, complied with CLRA notice requirements).

285.    Defendant failed to respond to Plaintiffs' demand within 30 days of notice, as it was required to do under Section 1782(b) of the California Civil Code. Defendant has not responded or communicated with Plaintiffs' counsel at all. Defendant has not taken any action to correct the problems with its labeling, marketing, or other business practices, nor has it refunded the money paid by Plaintiff Schnurer and the CA Subclass Members, or take any other action or made promises to repair, rectify, and/or provide relief.

286.    Defendant's misrepresentations and material omissions were made on the product packaging materials as well as in other print and digital ads and online sales platforms, and were presented by Defendant to Plaintiff Schnurer and the CA Subclass at the time of purchase. Defendant's unlawful misrepresentations and misleading claims include but are not limited to claims that the Active Wow Charcoal Tooth Products: (i) naturally whiten teeth and does so in a safe, healthy and/or gentle manner; (ii) are recognized as safe and effective for long-term daily use; (iii) are safe for enamel and gums; (iv) are third-party tested for enamel safety; (v) detoxify and purify; (vi) adsorb, draw, or lift stains off of teeth by operation of the adsorptive properties of charcoal; (vii) are excellent for gum health; (viii) fight cavities and tooth decay, by merit of the inclusion of xylitol; (ix) have re-mineralizing properties by merit of the inclusion of bentonite; (x) have anti-inflammatory and antiseptic properties, by merit of the inclusion of orange seed oil; and (xi) are generally beneficial to oral health and provide adequate dental hygiene for use as a replacement for toothpaste.

287.    Defendant also omitted material facts. Defendant's omissions were contrary to the representations it actually made. Additionally, Defendant was under a duty to disclose certain such omissions. Defendant's unlawful and material omissions include that: (i) its safety and efficacy claims lacked a reasonable basis and/or credible and competent scientific substantiation; (ii) the

safety for long-term use had not been evaluated; (iii) available scientific literature counter-indicated the safety and effectiveness of charcoal for use in dentifrice; and (iv) the products may in fact be detrimental to cosmetic aesthetics, deficient for dental hygiene, and/or and harmful to tooth enamel and gums and to overall oral health.

288.    Plaintiff Schnurer and the CA Subclass Members would not have purchased the Charcoal Tooth Products but-for Defendant's misrepresentations and material omissions. They have, and continue to, suffer injury and damages, including but not limited to the difference between the amount paid and the true value of the Charcoal Tooth Products, the price premiums Defendants charged as a result of the misrepresentations it exposed to consumers, and/or their entire out-of-pocket loss for the total amounts paid for the Active Wow Charcoal Tooth Products.

289.    Pursuant to Section 1780(a)(2) of the CLRA, Plaintiff Schnurer, on behalf of herself and Members of the CA Subclass, requests that this Court enjoin Defendant from continuing to engage in the unlawful and deceptive methods, acts and practices alleged above. Cal. Civ. Code § 1780(a)(2). Plaintiff Schnurer also requests that Defendant be required to provide public notice of the true facts of the Charcoal Tooth Products' safety, oral health and cosmetic benefits and other properties, and to take corrective action on its existing advertising campaign and labeling. Plaintiff Schnurer further requests that this Court enjoin Defendant from engaging in such unlawful and deceptive practices in the future.

290.    In addition to injunctive relief under the CLRA, Plaintiff Schnurer, on behalf of herself and the members of the CA Subclass, seeks to recover actual damages under Section 1780(a)(1); restitution of property under Section 1780(a)(3); punitive damages under Section 1780(a)(4) because Defendant has engaged in fraud, malice, or oppression; and any other relief the Court deems proper under Section 1780(a)(5).

291.    Plaintiff Schnurer also seeks an award of attorneys' fees and costs pursuant to, *inter alia*, Section 1780(e) of the California Civil Code and Section 1021.5 of the California Code of Civil Procedure.

## COUNT TEN
### *CA Subclass*
### Violation of California False Advertising Law ("FAL")
### Cali. Bus. and Prof. Code § 17500 *et seq*.

292.    Plaintiff Schnurer re-asserts and references the allegations in this Complaint, and incorporates as if fully set forth herein.

293.    Plaintiff Schnurer brings this Count individually, and on behalf of the CA Subclass.

294.    Section 17500 of the California Business and Professions Code, or the FAL, prohibits making false or misleading advertising claims.

295.    The Defendant's acts, conduct, misrepresentations, and non-disclosures of the material facts, as previously alleged herein, constitute false and misleading advertising and therefore are in violation of the FAL and are unlawful.

296.    Defendant's misleading marketing, advertising, packaging and labeling of the Active Wow Charcoal Tooth Products is false advertising likely to deceive a reasonable consumer. Defendant's marketing, advertising, packaging and labeling of the Active Wow Charcoal Tooth Products misrepresents the true benefits, effectiveness, safety and other properties of the Active Wow Charcoal Tooth Products, including but not limited to its claims that the Active Wow Charcoal Tooth Products: (i) naturally whiten teeth and does so in a safe, healthy and/or gentle manner; (ii) are recognized as safe and effective for long-term daily use;  (iii) are safe for enamel and gums; (iv) are third-party tested for enamel safety; (v) detoxify and purify; (vi) adsorb, draw, or lift stains off of teeth by operation of the adsorptive properties of charcoal; (vii) are excellent for gum health; (viii) fight cavities and tooth decay, by merit of the inclusion of xylitol; (ix) have

re-mineralizing properties by merit of the inclusion of bentonite; (x) have anti-inflammatory and antiseptic properties, by merit of the inclusion of orange seed oil; and (xi) are generally beneficial to oral health and provide adequate dental hygiene for use as a replacement for toothpaste.

297.    Plaintiff Schnurer and Members of the CA Subclass were indeed deceived regarding the characteristics of the Active Wow Charcoal Tooth Products. Plaintiff Schnurer and Members of the CA Subclass who purchased the falsely labeled Active Wow Charcoal Tooth Products were reasonable under the circumstances and could not have known the Active Wow Charcoal Tooth Products they purchased did not in fact bear the properties and qualities as advertised, marketed, packaged, and/or labeled.

298.    Defendant knew, or reasonably should have known, that the claims were untrue or misleading.

299.    Defendant has been unjustly enriched and should be required to make restitution to Plaintiffs and to the Class. Pursuant to Section 17535 of the Business and Professions Code, Plaintiff Schnurer seeks an order for the disgorgement of the improperly acquired funds by which Defendant was unjustly enriched. Plaintiff Schnurer and the CA Subclass also seek restitution in the amount they spent on the Charcoal Tooth Products.

300.    Plaintiff Schnurer and the CA Subclass Members seek injunctive and equitable relief. Plaintiff Schnurer and the CA Class Members are entitled to injunctive relief, and seek orders to enjoin Defendant from ongoing and future conduct as well as to take corrective action, and orders for any other equitable relief. Defendant's misconduct is ongoing and continuing, such that prospective injunctive relief is necessary.

301.    Plaintiff Schnurer is entitled to an award of attorneys' fees and costs in prosecuting this action against Defendant under California's Code of Civil Procedure Section 1021.5 and other applicable law, in part because:

k.    a successful outcome in this action will result in the enforcement of important rights affecting the public interest by maintaining the integrity of representations made concerning Active Wow's Charcoal Tooth Products;

l.    this action will result in a significant benefit to consumers or a large class of persons by bringing unlawful, unfair and deceptive conduct to a halt, and by causing the return of ill-gotten gains obtained by Defendant;

m.    unless this action is prosecuted, members of a large class of persons will not recover those monies, and many consumers would not be aware that they were victimized by Defendant's wrongful acts and practices;

n.    unless this action is prosecuted, Defendant will continue to mislead consumers about the true nature of its Charcoal Tooth Products;

o.    and an award of attorneys' fees and costs is necessary for the prosecution of this action and will result in a benefit to each member of the Class(es), and consumers in general.

## COUNT ELEVEN
### *Nationwide Class*
### Negligent Misrepresentation

302.    Plaintiffs re-assert and reference the allegations in this Complaint, and incorporate as if fully set forth herein.

303.    Defendant had a duty to provide a non-deceptive and lawful description of the benefits, safety, effectiveness, true value and other properties of the Active Wow Charcoal Tooth

Products, and to not conduct itself in contravention of public policy. It also had a duty to substantiate its claims and to make certain disclosures.

304.    Defendant had statutory duties as to the product labeling and advertising claims on its Charcoal Tooth Products, which included being truthful and not misleading, to have a reasonable basis and proper substantiation for the claims made, and to possess such substantiation at a level proportionate to the claimed level of substantiation.

305.    Defendant owed Plaintiffs and the Classes a duty to disclose the health and safety risk of the Charcoal Tooth Products. Instead it promoted false, misleading and/or unsubstantiated curative health claims. It possessed exclusive knowledge of the health and safety dangers and risks posed by its Charcoal Tooth Products and yet made incomplete representations about them.

306.    Defendant held itself out to Plaintiffs, Class members, and consumers in such a way as to create a "special relationship," whereby it was required under law to impart correct information. The existence of this special relationship is evidenced, in part, by:  Active Wow's extreme marketing and messaging that explicitly, affirmatively and persistently emphasized trustworthiness, friendliness, thoughtfulness, expertise, specialized knowledge, and invited consumers to instill trust and confidence in its brand and products. Active Wow was in a unique position to know the veracity of its claims and the safety and efficacy of its own products. Active Wow went beyond non-disclosure of its lack of claim substantiation, and expressly represented the Charcoal Tooth Products' safety and health attributes. Defendant's marketing messaging was heavy handed and affirmatively intimated that substantiation for its claims did in fact exist. Defendant doubled down on its branding and intentionally induced not only justifiable reliance by consumers but also their trust and confidence. Active Wow made many claims it knew were false

or misleading and that it knew average consumers were unequipped to assess, and in which it knew consumers would place trust and would rely upon.

307.    This special relationship obligated Active Wow, and continues to obligate Active Wow, to impart correct information to Plaintiffs and Class members.

308.    In its product packaging, labeling, marketing and advertising, Defendant made false and misleading representations and material omissions to Plaintiffs and the members of the Class, and/or omitted the disclosure of material facts. Defendant knew or should have known the representations and omissions rendered its claims on the Charcoal Tooth Products false or misleading. Defendant acted without reasonable grounds for believing the representations were true, and intended that said representations induce reliance of the Plaintiffs and the Class members. All of these material and misleading representations were made by Active Wow to Plaintiffs and Class members at various times and represent examples of fraudulent statements because they deceived Plaintiffs and the Class members.

309.    Defendant owed a duty of care to the Plaintiffs and Class members to give appropriate warnings about all dangers and risks associated with the intended use of the Charcoal Tooth Products, of which Defendant was aware or should have been aware. Defendant was under a continuing duty to warn and instruct the intended and foreseeable consumers of the Charcoal Tooth Products, including Plaintiffs and the Class members, of the same. Defendant was negligent and breached its duty of care by negligently failing to give adequate disclosures and warnings. Defendant knew that Plaintiffs and the Class members could not reasonably be aware of these risks.

310.    Despite the duties it owed, Defendant negligently asserted false statements and made material omissions on its product packaging and labeling and in its advertising and online marketing and advertising.

311.    Defendant made misrepresentations and misleading claims that the Active Wow Charcoal Tooth Products: (i) naturally whiten teeth and does so in a safe, healthy and/or gentle manner; (ii) are recognized as safe and effective for long-term daily use;  (iii) are safe for enamel and gums; (iv) are third-party tested for enamel safety; (v) detoxify and purify; (vi) adsorb, draw, or lift stains off of teeth by operation of the adsorptive properties of charcoal; (vii) are excellent for gum health; (viii) fight cavities and tooth decay, by merit of the inclusion of xylitol; (ix) have re-mineralizing properties by merit of the inclusion of bentonite; (x) have anti-inflammatory and antiseptic properties, by merit of the inclusion of orange seed oil; and (xi) are generally beneficial to oral health and provide adequate dental hygiene for use as a replacement for toothpaste.

312.    Defendant also omitted material facts. Defendant's omissions were contrary to the representations it actually made. Additionally, Defendant was under a duty to disclose certain such omissions. Defendant's unlawful and material omissions include that: (i) its safety and efficacy claims lacked a reasonable basis and/or credible and competent scientific substantiation; (ii) the safety for long-term use had not been evaluated; (iii) available scientific literature counter-indicated the safety and effectiveness of charcoal for use in dentifrice; and (iv) the products may in fact be detrimental to cosmetic aesthetics, deficient for dental hygiene, and/or and harmful to tooth enamel and gums and to overall oral health.

313.    Defendant made its false and misleading representations to Plaintiffs and to each member of the Nationwide Class.

314.    Defendant knew or should have known its representations and omissions rendered its claims on the Active Wow Charcoal Tooth Products false or misleading. Defendant acted without reasonable grounds for believing the representations were true.

315.    Defendant intended that its negligent misrepresentations be acted upon by Plaintiffs and the Class Members, and that it induce reliance. Defendant knew that Plaintiffs, the Class Members, and reasonable consumers in the general public would probably rely on their representations and, if they erroneous, that reliance would cause loss or injury to them.

316.    Plaintiffs and Members of the Nationwide Class reasonably and justifiably relied upon the Defendant's representations and omissions, which were in violation of Defendant's duties to them, and they took action in reliance thereon.

317.    Plaintiffs and Members of the Nationwide Class have suffered damage proximately caused by Defendant's negligence, they and continue to suffer injury and damages, including but not limited to the difference between the amount paid and the true value of the Charcoal Tooth Products, which were worth much less than represented, could not and did not function as represented, and brought potentially damaging consequences with their intended use, and the price premiums Active Wow charged as a result of the misrepresentations it exposed to consumers, and/or the total amounts paid for the Active Wow Tooth Products. Plaintiffs pray for relief as set forth below.

## VII.    PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated in the NY Subclass, CA Subclass, MI Subclass, and the Nationwide Class, and any other subsequently created classes, pray for relief as follows:

(a) Certification of this case as a class action, and of the Nationwide Class, NY Subclass, CA Subclass, and MI Subclass proposed herein (and any other classes and subclasses) under the Federal Rules of Civil Procedure, designation of the Plaintiffs as the representatives of the Classes, and appointment of the undersigned counsel as counsel for the Classes;

(b) An order enjoining Defendant from making further misrepresentations regarding the Active Wow Charcoal Tooth Products, including but not limited to statements that the Charcoal Tooth Products:

    a.  Naturally whiten teeth;

    b.  Detoxify and purify the mouth;

    c.  Safely polish and whiten teeth;

    d.  Are 3rd party tested for enamel safety;

    e.  Are safe for enamel and gums;

    f.  Operate to draw or lift off stains through adsorption or adsorptive properties of charcoal or other ingredients;

    g.  Fight cavities and tooth decay;

    h.  Have re-mineralizing properties;

    i.  Have anti-inflammatory and antiseptic properties;

    j.  Are safe and effective for long-term daily use;

    k.  Are generally beneficial to oral health; and

    l.  Provide adequate dental hygiene for use as a replacement for toothpaste.

(c) Injunctive relief, including an order enjoining Defendant from continuing with its misleading advertising and labeling, and an order requiring Defendant to issue

appropriate corrective advertisements and product labeling and packaging, and to retract its prior false and misleading claims and provide required material disclosures;

(d) Restitution, disgorgement, refund and/or return of all monies, revenues and profits obtained by Defendant by means of misleading, deceptive and unlawful acts or practices;

(e) Actual damages in an amount to be determined at trial;

(f) Statutory damages in the maximum amount provided by law;

(g) Punitive damages;

(h) Costs, expenses, and reasonable attorneys' fees pursuant to applicable statutes;

(i) Pre-judgment and post-judgment interest; and

(j) All such other and further relief as this Court may deem just and proper.

### JURY TRIAL DEMAND

Plaintiffs and the Classes hereby demand a jury trial of the claims asserted in this Complaint.

Dated: October 19, 2020

Respectfully submitted,

/s/ *William B. Federman*
William B. Federman
FEDERMAN & SHERWOOD
EDNY Bar Number: WF9124
10205 N. Pennsylvania Ave.
Oklahoma City, Oklahoma 73120
(405) 235-1560
(405) 239-2112 (facsimile)
wbf@federmanlaw.com
*Counsel for Plaintiffs Sonia Kumar, Kimberly Kareus, Shelby Stempkowski, and Mary Schnurer, and the Proposed Classes*